**FILED**

**FEBRUARY 1, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

BRIDGE HEALTHCARE FINANCE, LLC, a
Delaware Limited Liability Company and BRIDGE
OPPORTUNITY FINANCE, LLC, a Delaware
Limited Liability Company,

        Plaintiffs,

v.

COMMUNITY ELDERCARE SERVICES, LLC, a
Mississippi Limited Liability Company;
NATIONAL ELDERCARE SERVICES, INC., a
Mississippi Corporation; CLC OF BILOXI, LLC,
d/b/a BILOXI CLC, a Mississippi limited liability
company, CLC of BOONEVILLE, LLC, d.b.a.
LONGWOOD CLC, a Mississippi limited liability
company, CLC OF DRESDEN, LLC, d/b/a
HILLVIEW CLC, a Tennessee limited liability
company, CLC OF FULTON, LLC, d.b.a
COURTYARDS CLC, a Mississippi limited
liability company, CLC OF HUMBOLDT, LLC,
d/b/a BAILEY PARK CLC, a Tennessee limited
liability company, CLC OF IUKA, LLC, d/b/a
TISHOMINGO CLC, a Mississippi limited liability
company, CLC OF JACKSON, LLC, d//b/a
PLEASANT HILLS CLC, a Mississippi limited
liability company, CLC OF LAKE PROVIDENCE,
LLC, d/b/a LAKE PROVIDENCE SUBACTUE
REHABILITATION CENTER, a Mississippi
limited liability company, CLC OF LAURENL,
LLC, d/b/a LAURELWOOD CLC, a Mississippi
limited liability company, LCL OF LEXINGTON,
LLC, d/b/a BRIARWOOD CLC, a Tennessee
limited liability company, CLC OF LIBERTY,
LLC, a Mississippi limited liability company, CLC
OF MANCHESTER, LLC, d/b/a CRESTWOOD
CLC, a Tennessee limited liability company, CLC
OF MERIDIAN, LLC, d/b/a MERIDIAN CLC, a
Mississippi limited liability company,

No.

**JH**

**08 C 730**

**JUDGE KENNELLY**
**MAGISTRATE JUDGE ASHMAN**

CHICAGO/#1743172.1

CLC OF PASCAGOULA, d/b/a PLAZA CLC, a
Mississippi limited liability company, CLC OF
RIPLEY, LLC d/b/a LAUDERDALE CLC, a
Tennessee limited liability company, CLC OF
VAIDEN, LLC, a Mississippi limited liability
company, CLC OF WEST POINT, LLC, d/b/a
WEST POINT CLC, a Mississippi limited liability
company, CLC OF WHITEHAVEN, LLC, d/b/a
WHITEHAVEN CLC, a Tennessee limited liability
company, COMMUNITY LIVING CENTERS,
LLC, a Mississippi limited liability company,

Defendants.

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiffs Bridge Healthcare Finance, LLC and Bridge Opportunity Finance, LLC
(collectively, "Bridge"), by their counsel, and for their Verified Complaint for Declaratory
Judgment against Defendants (collectively,"Eldercare"), state as follows:

## NATURE OF THIS ACTION

This is an action for declaratory relief arising out of Eldercare's refusal to honor the
terms of a Loan and Security Agreement entered into with Bridge on October 27, 2006.
Specifically, Eldercare refuses to honor Section 10 of the Agreement addressing early
termination of the loans governed by the Security Agreement on the alleged grounds that such
provision is unenforceable. By this action, and pursuant to 28 U.S. § 2201 and Federal Rule of
Civil Procedure 57, Bridge seeks a declaration from this Court that Section 10 of the Agreement
is valid and enforceable, and determining the amount of fees owed to Bridge under Section 10
should Eldercare terminate and prepay the loans under the Agreement.

CHICAGO/#1743172.1

## THE PARTIES

1.      Plaintiff Bridge is a Delaware limited liability company with its principal place of business located in Chicago, Illinois.

2.      Upon information and belief, Defendants are Mississippi or Tennessee corporations and limited liability companies who are and whose members and managers are citizens of Mississippi or Tennessee.[1]    Defendants' principal places of business are in Mississippi, Tennessee, or Louisiana.

## JURISDICTION AND VENUE

3.      This action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(c).

4.      This Court has jurisdiction over the subject matter and parties to this action pursuant to 28 U.S.C. § 1332(a).  There is complete diversity of citizenship between the parties and the amount in controversy exceeds Seventy-Five Thousand ($75,000), exclusive of interests and costs.

## FACTUAL BACKGROUND

**Plaintiff Bridge's Lending Profile**

5.      Bridge is a Chicago-based lender that offers a combination of comprehensive loan products and financial expertise to businesses in several industries, including those in the healthcare industry.  In particular, Bridge offers loan products and restructuring assistance to financially distressed companies or to companies that cannot obtain traditional financing.  In doing so, Bridge assumes significant risk in providing loans to these companies.

---

[1]  Attached as Exhibit A is a complete list of all of the Defendants, their member/managers (if applicable), and the states of their citizenship or incorporation.

CHICAGO/#1743172.1

6.      Specifically, because in some cases borrowers improve their financial standing and creditworthiness (in many of those cases, due to the loans provided by Bridge), such borrowers seek to prepay and "opt-out" of the loans provided by Bridge to secure financing at lower interest rates.

7.      Lenders such as Bridge, who make long-term loans expecting a particular rate of interest, run the risk that prepayment resulting from, for example, a borrower's ability to subsequently obtain a lower rate of interest, will reduce their income.

8.      In order to protect itself and ensure that this significant risk endured by Bridge yields financial benefit, Bridge includes a standard prepayment provision in its loan agreements that requires a borrower to pay a fee to Bridge if the borrower opts out of and prepays the loan before it fully matures.

9.      Prepayment provisions (also known as "yield maintenance clauses") are commonly used by lenders such as Bridge to protect themselves when interest rates are falling or where a borrower is able to subsequently secure alternative financing and terminate the loan prior to its maturity date.

10.     Yield maintenance clauses, in turn, benefit borrowers such as Eldercare because they offer borrowers the privilege (and in many cases, the advantage) of prepaying a loan instead of being locked in for the entire term of the loan.

**Bridge's Security Agreement with Eldercare**

11.     Upon information and belief, Eldercare owns and operates over 20 nursing homes or senior living facilities in and around Mississippi.

12.     In or around 2004 or early 2005, Eldercare filed for bankruptcy pursuant to Chapters 11 of the United States Bankruptcy Code.

CHICAGO/#1743172.1

13.     As part of its bankruptcy restructuring, Eldercare sought lending and refinancing opportunities from a variety of lenders, including Bridge.

14.     On October 26, 2006, Bridge and Eldercare entered into a Loan and Security Agreement ("Security Agreement" or "Agreement") in which Bridge agreed to extend approximately $19.7 million in credit to Eldercare through three tranches of debt: a Revolving Loan, Term Loan A, and Term Loan B.[2] (A true and correct copy of the Security Agreement is attached hereto as Exhibit B.)

15.     Specifically, Bridge agreed to extend $4 million to Eldercare through Term Loan A; $8.7 million through Term Loan B; and $7 million through the Revolving Loan. (Ex. B at § 2.)

16.     The Security Agreement provides that, unless terminated earlier pursuant to the Agreement, each tranch of debt would mature and become payable in full on the following dates: (i) with respect to the Revolving Loan, October 27, 2010; (ii) with respect to Term Loan A, October 27, 2009; and (iii) with respect to Term Loan B, October 27, 2010. (Ex. B at § 10.)

17.     Additionally, Sections 10(d) and (e) of the Security Agreement specifically provide that if the Borrowers (as defined in the Agreement) terminate the Revolving Loan, Term Loan A, or Term Loan B prior to the maturity dates on the loans, the entire principal balance of each loan, together with accrued and unpaid interest on any of the outstanding loans, shall be immediately due and payable on the effective date of the termination. (Ex. B at § 10(d),(e).)

18.     The Agreement contains a bargained-for "yield maintenance clause" providing that should Eldercare prepay the loan rather than stay locked in the loan for its entire term,

---

[2]   The Security Agreement has been amended since its original execution, but such amendments do not affect the provisions of the Agreement giving rise to this cause of action.

Eldercare must pay a deferred commitment fee to be calculated as provided for in Section 10 of the Agreement

    19.    Specifically, Section 10(d) of the Security Agreement, which addresses the deferred commitment fee for the Revolving Loan and Term Loan A, states:

> If all of the Commitments terminate for any reason (whether by voluntary termination by Borrowers, by reason of the occurrence of an Event of Default or otherwise, but other than as a result of a mandatory prepayment pursuant to Section 2(d)(iv)) [of the Agreement] prior to the Revolving Loan Term, the entire principal balance, together with accrued and unpaid interest on any Loans then outstanding shall be immediately due and payable on the effective date of such termination and Borrowers shall pay to Agents, as compensation for the costs of Agents and Lender being prepared to make funds available to Borrowers under this Agreement, a deferred commitment fee calculated as necessary to achieve a yield . . . that provides Lenders the internal rate of return they would have received assuming that the Revolving Loans and Term Loan A, interest on the Revolving Loans and Term Loan a and fees had been paid as scheduled herein.
>
> In determining the deferred commitment fee, it shall be assumed that: (i) the aggregate Revolving Loan amount during the period from the date of prepayment to the end of the Revolving Loan Term was at all times equal to the amount of the average outstanding balance of Revolving Loans during the period from the date of the initial Revolving Loan advance hereunder to the date of prepayment, and (ii) the interest rate applicable to the Revolving Loans and Term Loan A, respectively, during the period from date of prepayment to end of the applicable Term was equal to the average rate applicable to the Revolving Loans and Term Loan A, respectively, during the period from the date of the initial Revolving Loan and Term Loan A, respectively, hereunder to the date of prepayment. For clarity, the deferred commitment fee provided in this Section 10(d) shall be calculated without reference to Term Loan B or the interest to be earned thereon.

    *See* Security Agreement, Ex. B, § 10(d) at p. 33.

    20.    Section 10(e) of the Agreement, which addresses prepayment of Term Loan B, states:

CHICAGO/#1743172.1

If Term Loan B shall be repaid for any reason (whether voluntary termination by Borrowers, by reason of the occurrence of an Event of Default or otherwise) prior to the end of the Term Loan B Term, Borrowers shall pay to Agents, for their ratable benefit, a prepayment fee calculated as follows: (A) five percent (5%) of the original principal amount of Term Loan B if such prepayment occurs on or prior to the first anniversary of the date of the advance of Term Loan B, (i) two percent (2%) of the original principal amount of Term Loan B if such prepayment occurs after the first anniversary but on or prior to the second anniversary of the date of the advance of Term Loan B or (C) one percent (1%) of the original principal amount of Term Loan B if such prepayment occurs at any time after the second anniversary of the date of the advance of Term Loan B.  The prepayment fee provided in this Section 10(e) is a separate and independent obligation of Borrowers from the deferred commitment fee provided in Section 10(d).

*See* Security Agreement, Ex. B, § 10(e) at p. 33 (emphasis in original.)

21.    The Security Agreement contains the following choice-of-law provision:

This Agreement . . . shall be governed and controlled by the internal laws of the state of Illinois as to interpretation, enforcement, validity, construction, effect, and in all other respects. . . .

*See* Security Agreement, Ex. B, § 26 at p. 81.

22.    Finally, the Security Agreement also contains the following forum selection

clause:

**To induce Agents and Lenders to accept this Agreement, each Credit Party irrevocably agrees that, subject to each Agent's sole and absolute election, all actions or proceedings in any way, manner or respect, arising out of or from or related to this Agreement, the other Agreements or the Collateral shall be litigated in courts having situs within the City of Chicago, State of Illinois**. Each Credit Party hereby consents and submits to the jurisdiction of any local, state or federal courts located within said city and state.  Each Credit Party hereby waives personal service of any and all process and agrees that all such service of process may be made upon such Credit Party by certified or registered mail, return receipt requested, addressed to such Credit Party, at the address set forth for notice in this

Agreement and service so made shall be complete ten (10) days after the same has been posted. **Each Credit Party hereby waives any right it may have to transfer or change the venue of any litigation brought against such Credit Party by agents or lenders in accordance with this section.**

*See* Security Agreement, Ex. B, § 26 at p. 82 (emphasis in original).

## Eldercare's Intention to Terminate the Loans and Refusal to Honor Prepayment Terms

23.     Eldercare has informed Bridge that it intends to exercise its bargained-for right to prepay the Revolving Loan, Term Loan A, and Term Loan B as set forth in Section 10 of the Security Agreement.

24.     Upon information and belief, Eldercare seeks to restructure its debt and has secured a committed lender who is willing to refinance the Revolving Loan, Term Loan A, and Term Loan B at a discounted rate.

25.     Based upon Eldercare's intention to terminate and prepay the loans governed by the Security Agreement, Bridge has demanded that it pay a deferred commitment fee pursuant to Section 10 of the Agreement.

26.     Upon information and belief, on or about January 30, 2008, Douglas M. Wright, Jr. ("Wright"), on behalf of Eldercare, sent a letter to Randy Abrahams of Bridge Healthcare Finance in which Wright confirmed that Eldercare has no intention to honor the terms of the provision set forth in Section 10 of the Agreement relating to the deferred commitment fee.

27.     Specifically, Wright unequivocally stated to Bridge, "the prepayment penalty clause is unenforceable by law, and that we have no obligation to pay any of it."

28.     Wright also stated that even if Eldercare were to honor the prepayment terms in Section 10 of the Agreement, it would pay far less than what Bridge has demanded and is rightfully owed under the Agreement.

CHICAGO/#1743172.1

## COUNT I: DECLARATORY JUDGMENT

29.     Bridge incorporates and restates Paragraphs 1 through 28 as Paragraph 29 as though fully set forth herein.

30.     There is an actual case or controversy between the parties based upon Eldercare's statements that Section 10 of the Security Agreement, governing prepayment and deferred commitment fees, is unenforceable under applicable law and that accordingly, Eldercare is not obligated to and refuses to perform under the Security Agreement.

31.     In addition to Eldercare's refusal to pay the deferred commitment fee based upon its position that Section 10 of the Agreement is unenforceable, Eldercare's interpretation of any fees it does owe to Bridge under Section 10 would result in a minimum of damages to Bridge of over $1 million.

32.     This controversy is ripe for adjudication based upon Eldercare's intent to terminate and prepay the loans governed by the Security Agreement and its refusal to honor the prepayment provisions contained in Section 10 of the Agreement.

33.     Pursuant to Federal Rule of Procedure 57 and 28 U.S.C. § 2201, this Court may declare the rights of the parties relative to the Security Agreement, including the enforceability and interpretation of Section 10 of the Agreement.

WHEREFORE, Plaintiffs Bridge Healthcare Finance, LLC and Bridge Opportunity Finance, LLC requests a judgment:

(a)     Adjudicating and making a binding declaration of the parties that Illinois law governs the interpretation of the Security Agreement and that the prepayment provision contained in Section 10 of the Security Agreement is valid enforceable;

(b)     Determining the fees owed to Bridge under Section 10 and ordering Defendants to honor the terms of the prepayment provision contained in Section 10 of the Security Agreement should they seek to terminate and prepay the loans; and

(c)     Entering such other and further relief as the Court deems just and proper.

CHICAGO/#1743172.1

Respectfully submitted,

BRIDGE HEALTHCARE FINANCE, LLC
and BRIDGE OPPORTUNITY FINANCE,
LLC


By:_____/s/ Thomas R. Dee_____
              One of Their Attorneys

Thomas R. Dee
Jeanah Park
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL  60601-1003
Phone: (312) 609-7500
Firm ID No. 44284

CHICAGO/#1743172.1