**08 C 730**

**JUDGE KENNELLY
MAGISTRATE JUDGE ASHMAN**

Exhibit B

Part 2

a.  If any Credit Party or any of its Subsidiaries sells any Collateral (other than Inventory in the ordinary course of business or any Equipment sold in the ordinary course of business so long as such Equipment is replaced by Equipment of equal or greater value) or any Collateral of any Credit Party or Subsidiary is lost or destroyed or taken by condemnation, Borrowers shall, unless otherwise agreed by Required Lenders, pay, or cause the applicable Credit Party or Subsidiary to pay, to Revolving Loan Administrative Agent for the ratable benefit of Lenders as and when received by any Credit Party or such Subsidiary and as a mandatory prepayment of the Obligations, as herein provided, a sum equal to the proceeds (including insurance payments but net of costs and taxes incurred in connection with such sale or event) received by such Credit Party or such Subsidiary from such sale, loss, destruction or condemnation.

b.  To the extent that the Collateral sold, lost, destroyed or condemned consists of Term Loan A Priority Collateral, the applicable prepayment shall be applied to Term Loan A, such payment to be applied to the remaining installments of principal in the inverse order of their maturities until Term Loan A is repaid in full, then to Term Loan B, such payment to be applied against the remaining installments of principal in the inverse order of their maturities, until Term Loan B is repaid in full, then to the Revolving Loans (without a concomitant reduction in the Revolving Loan Commitments) until repaid in full, and then to the other Obligations, in such order as Revolving Loan Administrative Agent determines in its sole discretion. To the extent that the Collateral sold, lost destroyed or condemned consists of Term Loan B Priority Collateral, the applicable prepayment shall be applied to Term Loan B, such payment to be applied against the remaining installments of principal in the inverse order of their maturities until Term Loan B is repaid in full, then to Term Loan A, such payment to be applied against the remaining installments of principal in the inverse order of their maturities until repaid in full, then to the Revolving Loans (without a concomitant reduction in the Revolving Loan Commitments) until repaid in full, and then against the other Obligations in such order as Revolving Loan Administrative Agent determines in its sole discretion. To the extent that the Collateral sold, lost, destroyed or condemned consists of Accounts, Inventory or other Collateral (other than Inventory sold in the ordinary course of business, any Equipment sold in the ordinary course of business so long as such Equipment is replaced by Equipment of equal or greater value or the Term Loan Priority Collateral), the applicable prepayment shall be applied to reduce the outstanding principal balance of the Revolving Loans (without a concomitant reduction in the Revolving Loan Commitments), then to the Term Loans, ratably, such payment to be applied against the remaining installments of principal in the inverse order of their maturities until such Term Loans are repaid in full, and then against the other Obligations, in

such order as Revolving Loan Administrative Agent determines in its sole discretion.

  c. Notwithstanding the foregoing, if the proceeds of insurance (net of costs and taxes incurred) with respect to any loss or destruction of Equipment, Inventory or other personal or Real Property (i) are less than $25,000, unless an Event of Default is then in existence, Revolving Loan Administrative Agent shall remit such proceeds to Credit Parties for use in replacing or repairing the damaged Collateral or (ii) are equal to or greater than $25,000 and Credit Parties have requested that Revolving Loan Administrative Agent agree to permit Credit Parties or the applicable Subsidiary to repair or replace the damaged Collateral, such amounts shall be provisionally applied to reduce the outstanding principal balance of the Revolving Loans until the earlier of Revolving Loan Administrative Agent's decision with respect thereto or the expiration of 90 days from such request. If Revolving Loan Administrative Agent agrees, in its sole discretion, to permit such repair or replacement under such clause (ii), such amount shall, unless an Event of Default is in existence, be remitted to Credit Parties for use in replacing or repairing the damaged Collateral; if Revolving Loan Administrative Agent declines to permit such repair or replacement or does not respond to Credit Parties within such 90 day period, such amount shall be applied to the Loans in the manner specified in the first sentence of Section 2(d)(iv)(1)(b), with respect to proceeds of any loss or destruction of Term Loan A Priority Collateral, the second sentence of Section 2(d)(iv)(1)(b), with respect to proceeds of any loss or destruction of Term Loan B Priority Collateral, or the third sentence of Section 2(d)(iv)(1)(b), with respect to proceeds of any loss or destruction of Collateral (other than the Term Loan Priority Collateral).

  (2) Proceeds from Issuance of Additional Indebtedness or Equity. If any Credit Party or any of its Subsidiaries issues any additional Indebtedness (other than Indebtedness permitted pursuant to Section 13(a)) or issues any additional Equity Interests, Borrowers shall pay, or cause the Credit Party or Subsidiary to pay, to Revolving Loan Administrative Agent for the ratable benefit of Lenders, when and as received by such Credit Party or Subsidiary and as a mandatory prepayment of the Obligations, a sum equal to 100% of the net proceeds to such Credit Party of the issuance of such Indebtedness or Equity Interest, as applicable. Any such prepayment shall be applied to the Obligations in the manner specified in the third sentence of Section 2(d)(iv)(1)(b).

  (3) [Intentionally Deleted].

  (4) Construction of Mandatory Prepayment Provisions. Nothing in this Section 2(d)(iv) shall be construed to constitute any Agent's or

11

any Lender's consent to any transaction that is not permitted by other provisions of this Loan Agreement or the other Loan Documents.

(c)   Notes.  The Loans shall, in Agents' and Lenders' sole discretion, be evidenced by one or more promissory notes in form and substance satisfactory to each Lender. However, if such Loans are not so evidenced, such Loans may be evidenced solely by entries upon the books and records maintained by Agents and each Lender.

3.   LETTERS OF CREDIT.

(a)   General Terms.  Subject to the terms and conditions of this Agreement and the Other Agreements, during the Revolving Loan Term, Revolving Loan Administrative Agent may, in its sole discretion, from time to time issue, cause to be issued and co-sign for or otherwise guarantee, upon Borrower Representative's request, commercial and/or standby Letters of Credit; provided, that the aggregate undrawn face amount of all such Letters of Credit shall at no time exceed Two Hundred Thousand and No/100 Dollars ($200,000). The Existing Letter of Credit shall be deemed to be a Letter of Credit hereunder.  Payments made by the issuer of a Letter of Credit to any Person on account of any Letter of Credit shall be immediately payable by Borrowers without notice, presentment or demand, and each Borrower agrees that each payment made by the issuer of a Letter of Credit in respect of a Letter of Credit issued on behalf of any Borrower shall constitute a request by such Borrower for a Revolving Loan to reimburse such issuer.  In the event such Revolving Loan is not advanced by Lenders for any reason, such reimbursement obligations (whether owing to the issuer of the Letter of Credit or Lenders) shall become part of the Obligations hereunder and shall bear interest at the rate then applicable to Revolving Loans until repaid.  Borrowers shall remit to Revolving Loan Administrative Agent, for the benefit of Revolving Lenders, a Letter of Credit fee equal to five percent (5.00%) of the face amount of each Letter of Credit ("**Letter of Credit Fee**"), which fee shall be payable at the time of issuance of such Letter of Credit.  Borrowers shall also pay on demand the normal and customary administrative charges of the issuer of the Letter of Credit for issuance, amendment, negotiation, renewal or extension of any Letter of Credit.

(b)   Requests for Letters of Credit.  Borrower Representative shall make requests for Letters of Credit in writing at least three (3) Business Days prior to the date such Letter of Credit is to be issued.  Each such request shall specify the date such Letter of Credit is to be issued, the amount thereof, the name and address of the beneficiary thereof and a description of the transaction to be supported thereby.  Any such notice shall be accompanied by the form of Letter of Credit requested and any application or reimbursement agreement required by the issuer of such Letter of Credit.  If any term of such application or reimbursement agreement is inconsistent with this Agreement, then the provisions of this Agreement shall control to the extent of such inconsistency.

(c)   Obligations Absolute.  Each Borrower shall be obligated to reimburse the issuer of any Letter of Credit, or Revolving Loan Administrative Agent and/or Revolving Lenders if Revolving Loan Administrative Agent and/or Revolving Lenders have reimbursed such issuer on a Borrower's behalf, for any payments made in respect of any Letter of Credit, which obligation shall be unconditional and irrevocable and shall be paid regardless of: (i) any lack of validity or enforceability of any Letter of Credit, (ii) any amendment or waiver of or

12

consent or departure from all or any provisions of any Letter of Credit, this Agreement or any other Loan Document, (iii) the existence of any claim, set off, defense or other right which a Borrower or any other Person may have against any beneficiary of any Letter of Credit or any Agent, any Lender or the issuer of the Letter of Credit, (iv) any draft or other document presented under any Letter of Credit proving to be forged, fraudulent, invalid, or insufficient in any respect or any statement therein being untrue or inaccurate in any respect, (v) any payment under any Letter of Credit against presentation of a draft or other document that does not comply with the terms of such Letter of Credit, and (vi) any other act or omission to act or delay of any kind of the issuer of such Letter of Credit, any Agent, any Lender or any other Person or any other event or circumstance that might otherwise constitute a legal or equitable discharge of a Borrower's obligations hereunder. It is understood and agreed by each Borrower that the issuer of any Letter of Credit may accept documents that appear on their face to be in order without further investigation or inquiry, regardless of any notice or information to the contrary.

    (d)  Expiration Dates of Letters of Credit. The expiration date of each Letter of Credit shall be no later than the earlier of (i) one (1) year from the date of issuance and (ii) the thirtieth (30th) day prior to the end of the Revolving Loan Term. Notwithstanding the foregoing, a Letter of Credit may provide for automatic extensions of its expiration date for one or more one (1) year periods, so long as the issuer thereof has the right to terminate the Letter of Credit at the end of each one (1) year period and no extension period extends past the thirtieth (30th) day prior to the end of the Revolving Loan Term and so long as Borrowers shall remit to Revolving Loan Administrative Agent, for the benefit of Revolving Lenders, a Letter of Credit Fee at the time of the extension or renewal of such Letter of Credit.

    (e)  Participation. Immediately upon the issuance of a Letter of Credit in accordance with this Agreement, each Revolving Lender shall be deemed to have irrevocably and unconditionally purchased and received from Revolving Loan Administrative Agent, without recourse or warranty, an undivided interest and participation therein to the extent of such Revolving Lender's Pro Rata Share (including, without limitation, all obligations of Borrowers with respect thereto). Each Borrower hereby indemnifies each Agent and each Lender against any and all liability and expense it may incur in connection with any Letter of Credit and agrees to reimburse Revolving Loan Administrative Agent and each Revolving Lender for any payment made by Revolving Loan Administrative Agent or any Revolving Lender to the issuer.

4. INTEREST, FEES AND CHARGES.

   (a) Interest Rate.

      (i) Revolving Loans. Each Revolving Loan shall bear interest at the rate which is equal to the greater of (x) five and one-quarter percent (5.25%) per annum in excess of the Prime Rate in effect from time to time, or (y) ten and one-quarter percent (10.25%) per annum, which interest shall be payable on the first Business Day of each month in arrears. Said rate of interest shall increase or decrease by an amount equal to each increase or decrease in the Prime Rate effective on the effective date of each such change in the Prime Rate.

      (ii) Term Loan A. Each advance under Term Loan A shall bear interest at the rate which is equal to the greater of (x) six percent (6.00%) in excess of the Prime Rate in effect from time to time or (y) thirteen and three-quarters percent (13.75%) per annum payable on the first Business Day of each month in arrears. Said rate of interest shall increase or decrease by an amount equal to each increase or decrease in the Prime Rate effective on the effective date of each such change in the Prime Rate.

      (iii) Term Loan B. Each advance under Term Loan B shall bear interest at the rate which is equal to the greater of (x) two percent (2.00%) in excess of the Prime Rate in effect from time to time or (y) ten and one-quarter percent (10.25%) per annum payable on the first Business Day of each month in arrears. Said rate of interest shall increase or decrease by an amount equal to each increase or decrease in the Prime Rate effective on the effective date of each such change in the Prime Rate.

      (iv) Default Interest; Calculation of Interest. Upon the occurrence of an Event of Default and during the continuance thereof, each Loan shall bear interest at the rate of five percent (5%) per annum in excess of the interest rate otherwise payable thereon, which interest shall be payable on demand. All interest (default and non-default interest) shall be calculated on the basis of a 360-day year.

   (b) Fees and Charges.

      (i) Closing Fee: Borrowers shall have paid to Agents, for the ratable benefit of Agents, closing fees in the aggregate amount of Two Hundred Thirty-Two Thousand Dollars ($232,000), which fees shall be deemed to have been fully earned on the date of payment thereof.

      (ii) Unused Line Fee: Borrowers shall pay to Revolving Loan Administrative Agent, for the ratable benefit of the Revolving Lenders, an unused line fee of 0.35% per month of the difference between the Maximum Revolving Loan Limit and the average daily balance of the Revolving Loans plus the Letter of Credit Obligations for each month, which fee shall be fully earned by Revolving Lenders and payable monthly in arrears on the first Business Day of each month. Said fee shall be calculated on the basis of a 360-day year.

14

    (iii) <u>Collateral Monitoring Fee</u>: On the Closing Date and on the first Business Day of each calendar month thereafter, Borrowers shall pay Revolving Loan Administrative Agent for its own account a collateral monitoring fee of Eleven Thousand Seven Hundred and No/100 Dollars ($11,700.00); provided however, that (i) Borrowers agree and acknowledge that during each loan year a full year's fee shall be deemed earned at the beginning of such year; and (ii) until the first anniversary of the Closing Date, such monthly payment shall be reduced to One Thousand Six Hundred Seventy-Five and No/100 Dollars ($1,675.00) (which amount equals the quotient of (x) the difference of the first year's collateral monitoring fee ($140,400) <u>less</u> the collateral monitoring fee Borrowers have paid in advance ($120,300) <u>divided by</u> (y) twelve (12)).

    (iv) <u>Costs and Expenses</u>: Borrowers shall reimburse Agents for all costs and expenses, including, without limitation, legal expenses and reasonable attorneys' fees (whether for internal or outside counsel), incurred by Agents in connection with the (i) documentation and consummation of this transaction and any other transactions among Borrowers, Agents and Lenders, including, without limitation, Uniform Commercial Code and other public record searches and filings, overnight courier or other express or messenger delivery, appraisal costs, surveys, title insurance and environmental audit or review costs; (ii) collection, protection or enforcement of any rights in or to the Collateral; (iii) collection of any Obligations; (iv) audit and collateral examination fees; (v) administration and enforcement of any of Agents' and/or any Lender's rights under this Agreement or any Other Agreement; and (vi) all amendments, consents, waivers and other modifications from time to time required in connection with this Agreement and the Other Agreements. Borrowers shall also pay (x) all service charges and similar fees with respect to all bank accounts maintained by any Borrower, or by any Agent or any Lender for the benefit of any Borrower in connection with this Agreement, together with fees and charges payable in connection with any additional services required by any Borrower in connection with any bank accounts including, without limitation, administrative service charges incurred by any Agent or any Lender in connection with lockbox accounts, concentration accounts or other accounts, and (y) all administrative fees and service charges in respect of operations and funding services provided by any Agent in connection with the Loans. All such costs, expenses and charges shall constitute Obligations hereunder, shall be payable by Borrowers to Agents on demand, and until paid, shall bear interest at the highest rate then applicable to Loans hereunder. Any amount required to be paid as interest hereunder, or as fees, costs, expenses or other charges payable under this Agreement or any other Loan Documents, or with respect to any Obligations, shall, to the extent due and owing be deemed a request for a Revolving Loan, in the amount required to pay same in full, as of the date such payment is due and shall be charged to the loan account of Borrowers. In addition, following the occurrence of an Event of Default, Borrowers shall reimburse each Lender for all costs and expenses, including, without limitation, legal expenses and reasonable attorneys' fees, incurred by such Lender in connection with the (a) collection, protection or enforcement of any rights in or to the Collateral; (b) collection of any Obligations; (c) administration and enforcement of any of Lenders' rights under this Agreement; and (d) documentation and negotiation of any waiver, consent, forbearance or other agreement in connection therewith.

(v) <u>Capital Adequacy Charge</u>. If any Agent or any Lender shall have determined that the adoption of any law, rule or regulation regarding capital adequacy, or any change therein or in the interpretation or application thereof, or compliance by such Agent or such Lender with any request or directive regarding capital adequacy (whether or not having the force of law) from any central bank or governmental authority enacted after the date hereof, does or shall have the effect of reducing the rate of return on such party's capital as a consequence of its obligations hereunder to a level below that which such Agent or such Lender could have achieved but for such adoption, change or compliance (taking into consideration such party's policies with respect to capital adequacy) by a material amount, then from time to time, after submission by such Agent or such Lender to Borrowers of a written demand therefor ("**Capital Adequacy Demand**") together with the certificate described below, Borrowers shall pay to such party such additional amount or amounts ("**Capital Adequacy Charge**") as will compensate such party for such reduction, such Capital Adequacy Demand to be made with reasonable promptness following such determination. A certificate of such Agent or such Lender claiming entitlement to payment as set forth above shall be conclusive in the absence of manifest error. Such certificate shall set forth the nature of the occurrence giving rise to such reduction, the amount of the Capital Adequacy Charge to be paid to such Agent or such Lender, and the method by which such amount was determined. In determining such amount, the applicable party may use any reasonable averaging and attribution method, applied on a non-discriminatory basis.

(vi) <u>Maximum Interest</u>. It is the intent of the parties that the rate of interest and other charges to Borrowers under this Agreement and the Other Agreements shall be lawful; therefore, if for any reason the interest or other charges payable under this Agreement are found by a court of competent jurisdiction, in a final determination, to exceed the limit which any Agent or any Lender may lawfully charge Borrowers, then the obligation to pay interest and other charges shall automatically be reduced to such limit and, if any amount in excess of such limit shall have been paid, then such amount shall be refunded to Borrowers.

(vii) <u>Taxes</u>. All payments made by each Credit Party hereunder or under any Loan Documents shall be made without setoff, counterclaim, or other defense. To the extent permitted by applicable law, all payments hereunder or under the Loan Documents (including any payment of principal, interest, or fees) to, or for the benefit, of any person shall be made by each Credit Party free and clear of and without deduction or withholding for, or account of, any Taxes now or hereinafter imposed by any taxing authority. If any Credit Party makes any payment hereunder or under any Loan Document in respect of which it is required by applicable law to deduct or withhold any Taxes, such Credit Party shall increase the payment hereunder or under any such Loan Document such that after the reduction for the amount of Taxes withheld (and any taxes withheld or imposed with respect to the additional payments required under this <u>Section 4(b)(vii)</u>, the amount paid to the Lenders or the Agents equals the amount that was payable hereunder or under any such Loan Document without regard to this <u>Section 4(b)(vii)</u>. To the extent any Credit Party withholds any Taxes on payments hereunder or under any Loan Document, such Credit Party shall pay the full amount deducted to the relevant taxing authority within the time allowed for payment under

16

applicable law and shall deliver to the Agents within 30 days after it has made payment to such authority a receipt issued by such authority (or other evidence satisfactory to the Agents) evidencing the payment of all amounts so required to be deducted or withheld from such payment. If any Lender or any Agent is required by law to make any payments of any Taxes on or in relation to any amounts received or receivable hereunder or under any other Loan Document, or any Tax is assessed against a Lender or any Agent with respect to amounts received or receivable hereunder or under any other Loan Document, each Credit Party will indemnify such person against (i) such Tax (and any reasonable counsel fees and expenses associated with such Tax) and (ii) any taxes imposed as a result of the receipt of the payment under this Section 4(b)(vii). A certificate prepared in good faith as to the amount of such payment by such Lender or such Agent shall, absent manifest error, be final, conclusive, and binding on all parties.

(viii) Currency. Each reference in this Agreement to "Dollars" or "$" (the "**relevant currency**") is of the essence. To the fullest extent permitted by law, the obligation of each Credit Party in respect of any amount due in the relevant currency under this Agreement shall, notwithstanding any payment in any other currency (whether pursuant to a judgment or otherwise), be discharged only to the extent of the amount in the relevant currency that the Person entitled to receive such payment may, in accordance with normal banking procedures, purchase with the sum paid in such other currency (after any premium and costs of exchange) on the Business Day immediately following the day on which such Person receives such payment. If the amount of the relevant currency so purchased is less than the sum originally due to such Person in the relevant currency, each Credit Party agrees, as a separate obligation and notwithstanding any such judgment, to indemnify such Person against such loss, and if the amount of the specified currency so purchased exceeds the sum of (a) the amount originally due to the relevant Person in the specified currency plus (b) any amounts shared with other Lenders as a result of allocations of such excess as a disproportionate payment to such Person under Section 5 hereof, such Person agrees to remit such excess to Borrower Representative.

5. SETTLEMENTS, DISTRIBUTIONS AND APPORTIONMENT OF PAYMENTS.

(a) Settlements. On a weekly basis (or more frequently if requested by Agents) (a "**Settlement Date**"), Agents shall provide the Lenders with a statement of the outstanding balance of the Obligations as of the end of the Business Day immediately preceding the Settlement Date (the "**Pre-Settlement Determination Date**") and the current balance of the Loans funded by each Lender (whether made directly by such Lender to Borrowers or constituting a settlement by such Lender of a previous Disproportionate Advance made by Revolving Loan Administrative Agent on behalf of such Lender to Borrowers). If such statement discloses that such Lender's current balance of the Loans as of the Pre-Settlement Determination Date exceeds such Lender's Pro Rata Share of the Obligations outstanding as of the Pre-Settlement Determination Date, then the applicable Agent shall, on the Settlement Date, transfer, by wire transfer, the net amount due to such Lender in accordance with such Lender's instructions, and if such statement discloses that such Lender's current balance of the Loans as of the Pre-Settlement Determination Date is less than such Lender's Pro Rata Share of the Obligations outstanding as of the Pre-Settlement Determination Date, then such Lender shall, on

17

the Settlement Date, transfer by wire transfer the net amount due to the applicable Agent in accordance with such Agent's instructions. Payments actually received by Agents with respect to the following items shall be distributed by the applicable Agent to the applicable Lenders as follows: (1) on a monthly basis, payments to be applied to interest on the Loans shall be paid to each Lender in proportion to its Pro Rata Share, so that each Lender shall only receive interest on the amount of funds actually advanced by such Lender (and Revolving Loan Administrative Agent shall receive interest on any Disproportion Advances); and (2) on a monthly basis, payments to be applied to the applicable fees provided in Section 4 and Section 10(d) shall be paid to each Lender in proportion to its Pro Rata Share, as applicable.

(b) <u>Application of Payments</u>. So long as no Event of Default has occurred and is continuing, (i) payments matching specific scheduled payments then due shall be applied to those scheduled payments, (ii) voluntary prepayments shall be applied as designated by the Borrowers, or, in the absence of such designation, as determined by Agents in their sole discretion, (iii) proceeds from the sale of Inventory in the ordinary course of business and the collection of Accounts shall be applied as determined by Agents in their sole discretion, (iv) mandatory prepayments of the type described in Section 2(d), shall be applied as described in that Section, and (v) mandatory prepayments resulting from Revolving Loans in excess of the Revolving Borrowing Base Amount or Maximum Revolving Loan Limit, as applicable, shall be applied in the order set forth in Section 5(c).

(c) <u>Application of Collateral Proceeds</u>.

(i) After the occurrence and during the continuance of an Event of Default, all amounts collected or received by Agents or any Lender as proceeds from the sale of, or other realization upon, all or any part of the Collateral (other than the Term Loan Priority Collateral) shall be applied by Agents as follows, unless a court of competent jurisdiction shall otherwise direct:

(1) <u>FIRST</u>, to pay all fees, expense reimbursements, indemnities and other amounts then due to Agents until paid in full;

(2) <u>SECOND</u>, ratably, to pay all fees and indemnities then due to the Revolving Lenders until paid in full;

(3) <u>THIRD</u>, ratably, to pay interest then due in respect of the Revolving Loans until paid in full;

(4) <u>FOURTH</u>, ratably, to pay principal of the Revolving Loans until paid in full;

(5) <u>FIFTH</u>, ratably, to pay all fees and indemnities then due to the Term Loan Lenders;

(6) <u>SIXTH</u>, ratably, to pay interest then due in respect of the Term Loans until paid in full;

(7)　SEVENTH, ratably, to pay principal of the Term Loans until paid in full;

(8)　EIGHTH, to the ratable payment of all other Obligations then due and payable; and

(9)　NINTH, the balance, if any, after all of the Obligations have been satisfied, shall be deposited by Agents into the Concentration Account.

(ii)　After the occurrence and during the continuance of an Event of Default, all amounts collected or received by Agents or any Lender as proceeds from the sale of, or other realization upon, all or any part of the Term Loan A Priority Collateral shall be applied by Agents as follows, unless a court of competent jurisdiction shall otherwise direct:

(1)　FIRST, to pay all fees, expense reimbursements, indemnities and other amounts then due to the Agents until paid in full;

(2)　SECOND, ratably, to pay all fees and indemnities then due to the Term Loan A Lenders;

(3)　THIRD, ratably, to pay interest then due in respect of Term Loan A until paid in full;

(4)　FOURTH, ratably, to pay principal of Term Loan A until paid in full;

(5)　FIFTH, ratably, to pay all fees and indemnities then due to the Term Loan B Lenders;

(6)　SIXTH, ratably, to pay interest then due in respect of Term Loan B until paid in full;

(7)　SEVENTH, ratably, to pay principal of Term Loan B until paid in full;

(8)　EIGHTH, ratably, to pay all fees and indemnities then due to the Revolving Lenders until paid in full;

(9)　NINTH, ratably, to pay interest then due in respect of the Revolving Loans until paid in full;

(10)　TENTH, ratably, to pay principal of the Revolving Loans until paid in full;

(11)　ELEVENTH, to the ratable payment of all other Obligations then due and payable; and

19

(12) TWELFTH, the balance, if any, after all of the Obligations have been satisfied, shall be deposited by Agents into the Concentration Account.

(iii) After the occurrence and during the continuance of an Event of Default, all amounts collected or received by Agents or any Lender as proceeds from the sale of, or other realization upon, all or any part of the Term Loan B Priority Collateral shall be applied by Agents as follows, unless a court of competent jurisdiction shall otherwise direct:

(1) FIRST, to pay all fees, expense reimbursements, indemnities and other amounts then due to the Agents until paid in full;

(2) SECOND, ratably, to pay all fees and indemnities then due to the Term Loan B Lenders;

(3) THIRD, ratably, to pay interest then due in respect of Term Loan B until paid in full;

(4) FOURTH, ratably, to pay principal of Term Loan B until paid in full;

(5) FIFTH, ratably, to pay all fees and indemnities then due to the Term Loan A Lenders;

(6) SIXTH, ratably, to pay interest then due in respect of Term Loan A until paid in full;

(7) SEVENTH, ratably, to pay principal of Term Loan A until paid in full;

(8) EIGHTH, ratably, to pay all fees and indemnities then due to the Revolving Lenders until paid in full;

(9) NINTH, ratably, to pay interest then due in respect of the Revolving Loans until paid in full;

(10) TENTH, ratably, to pay principal of the Revolving Loans until paid in full;

(11) ELEVENTH, to the ratable payment of all other Obligations then due and payable; and

(12) TWELFTH, the balance, if any, after all of the Obligations have been satisfied, shall be deposited by Agents into the Concentration Account.

(d) Direct Lender Payments. Each Lender shall be entitled to direct Borrowers to make payment of such Lender's portion of any specific scheduled payment of principal, interest or any fee payable for the benefit of such Lender under this Agreement directly

20

to such Lender at the office or bank account specified from time to time by such Lender (a "**Direct Payment**") in a writing to Agents and Borrower Representative (a "**Direct Payment Notice**") so long as (i) such Lender is not a Defaulting Lender and (ii) such Lender shall provide Agents a statement on or before 11:00 A.M. (Chicago time) on each Pre-Settlement Determination Date of all payments received by such Lender directly from the Borrower since the last Settlement Date. In the event that Agents determine that any condition to Direct Payment to a Lender does not exist or no longer exists, Agents may direct Borrowers in a writing to such Lender and Borrower Representative to cease making Direct Payments to such Lender and instead make payments directly to the office or bank account designed by Agents. Following Borrower Representative's receipt of such notice, Borrowers shall cease making Direct Payments to such Lender and shall instead make such payments directly to the office or bank account designated by Agents. In the event that any Lender that has issued a Direct Payment Notice receives any payment that is not due and owing to such Lender in whole or in part, such Lender shall deliver the portion of such payment not due and owing to such Lender to the office or bank account designated by Agents at or prior to 3:00 P.M. (Chicago time) on the same day such Lender receives such payment, or, if such payment was received by such Lender after 1:00 P.M. (Chicago time), at or prior to 11:00 A.M. on the next succeeding Business Day.

(e) <u>Defaulting Lender</u>. Notwithstanding the foregoing, neither Agent shall be obligated to transfer to any Defaulting Lender any payment made by any Credit Party to such Agent, nor shall such Defaulting Lender be entitled to share any interest, fees or other payment hereunder, until payment is made by such Defaulting Lender to such Agent as required in this Agreement.

6. COLLATERAL.

(a) <u>Grant of Security Interest to Agents</u>. As security for the payment of all Loans now or in the future made by Lenders to Borrowers hereunder and for the payment or other satisfaction of all other Obligations, each Credit Party hereby assigns and grants separately to each of the Term Loan Administrative Agent, for its benefit and the benefit of the Term Loan Lenders and the Revolving Loan Administrative Agent, for its benefit and the benefit of the Revolving Lenders, a continuing security interest in the following property of such Credit Party, whether now or hereafter owned, existing, acquired or arising and wherever now or hereafter located:

(i) All Accounts, and all money, contract rights, chattel paper, documents, deposit accounts, securities, investment property and instruments with respect thereto, and all of such Credit Party's rights, remedies, security, Liens and supporting obligations, in, to and in respect of the foregoing, including, without limitation, rights of stoppage in transit, replevin, repossession and reclamation and other rights and remedies of an unpaid vendor, lienor or secured party, guaranties or other contracts of suretyship with respect to the Accounts, deposits or other security for the obligation of any Account Debtor, and credit and other insurance and further including the following:

(1) To the extent not listed above, all money, securities, investment property, deposit accounts, instruments and other property and the proceeds thereof that are now or hereafter held or received by, in transit to, in

21

possession of, or under the control of any Agent or a bailee or Affiliate of any Agent, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

(2) To the extent not listed above, all now owned or hereafter acquired deposit accounts into which Accounts or the proceeds of Accounts are deposited, including the Lockbox Accounts;

(3) All of such Credit Party's right, title and interest in, to and in respect of all goods relating to, or which by sale have resulted in, Accounts, including, without limitation, all goods described in invoices or other documents or instruments with respect to, or otherwise representing or evidencing, any Account, and all returned, reclaimed or repossessed goods; and

(4) All general intangibles (including, but not limited to, payment intangibles) and other property of every kind and description with respect to, evidencing or relating to Accounts, including, but not limited to, all existing and future customer lists, choses in action, claims, books, records, ledger cards, contracts, licenses, formulae, tax and other types of refunds, returned and unearned insurance premiums, rights and claims under insurance policies, and computer programs, information, software, records, and data, as the same relate to the Accounts;

(ii) all Chattel Paper, Instruments, Documents and General Intangibles (including, without limitation, all Intellectual Property, licenses, software, franchises, tax refund claims, claims against carriers and shippers, guarantee claims, contract rights, Payment Intangibles, security interests, security deposits, rights to indemnification, information contained in computer media (such as data bases, source and object codes, and information therein), permits, licenses, certifications, authorizations and approvals, and the rights of such Credit Party thereunder, issued by any governmental, regulatory, or private authority, agency, or entity whether now owned or hereafter acquired);

(iii) all Inventory;

(iv) all Goods (other than Inventory), including, without limitation, Equipment, vehicles and Fixtures;

(v) all Investment Property;

(vi) all Deposit Accounts, bank accounts, deposits and cash;

(vii) all Letter-of-Credit Rights;

(viii) Commercial Tort Claims listed on Schedule 11(b) hereto from time to time;

(ix) any other property of such Credit Party now or hereafter in the possession, custody or control of either Agent or any Lender or any agent or any parent,

22

affiliate or subsidiary of either Agent or any Lender or any participant with any Lender in the Loans, for any purpose (whether for safekeeping, deposit, collection, custody, pledge, transmission or otherwise); and

(x) all additions and accessions to, substitutions for, and replacements, products and Proceeds of the foregoing property, including, without limitation, proceeds of all insurance policies insuring the foregoing property, and all of such Credit Party's books and records relating to any of the foregoing and to such Credit Party's business.

(b) Lien Priority. Solely as between the Revolving Loan Administrative Agent and Revolving Lenders and the Term Loan Administrative Agent and Term Loan Lenders, by virtue of this Agreement (i) with respect to all Collateral (other than Term Loan Priority Collateral), the Revolving Loan Administrative Agent and Revolving Lenders shall be deemed to have a first priority Lien on such Collateral and the Term Loan Administrative Agent and the Term Loan Lenders shall be deemed to have a second priority Lien on such Collateral, (ii) with respect to Term Loan A Priority Collateral, the Term Loan Administrative Agent (in its capacity as administrative agent for the Term Loan A Lenders) and Term Loan A Lenders shall be deemed to have a first priority Lien on such Term Loan A Priority Collateral, the Term Loan Administrative Agent (in its capacity as administrative agent for the Term Loan B Lenders) and the Term Loan B Lenders shall be deemed to have a second priority Lien on such Term Loan A Priority Collateral, and the Revolving Loan Administrative Agent and Revolving Lenders shall be deemed to have a third priority Lien on such Term Loan A Priority Collateral and (iii) with respect to Term Loan B Priority Collateral, the Term Loan Administrative Agent (in its capacity as administrative agent for the Term Loan B Lenders) and Term Loan B Lenders shall be deemed to have a first priority Lien on such Term Loan B Priority Collateral, the Term Loan Administrative Agent (in its capacity as administrative agent for the Term Loan A Lenders) and the Term Loan A Lenders shall be deemed to have a second priority Lien on such Term Loan B Priority Collateral, and the Revolving Loan Administrative Agent and Revolving Lenders shall be deemed to have a third priority Lien on such Term Loan B Priority Collateral. The terms and provisions of this Section 6(b) shall be for the sole benefit of Revolving Loan Administrative Agent and Revolving Lenders, Term Loan Administrative Agent and the Term Loan A Lenders and the Term Loan Administrative Agent and the Term Loan B Lenders and their respective successors and assigns, and no other Person shall have any right, benefit, priority or interest under or because of this Section 6(b).

(c) Separate Grants of Security and Separate Classification. The Term Loan Administrative Agent, for itself (in its capacity as administrative agent for the Term Loan A Lenders) and on behalf of the Term Loan A Lenders, the Term Loan Administrative Agent, for itself (in its capacity as administrative agent for the Term Loan B Lenders) and on behalf of the Term Loan B Lenders and the Revolving Loan Administrative Agent, for itself and on behalf of the Revolving Lenders, each acknowledges and agrees that: (a) the grants of Liens pursuant to the Loan Documents constitute separate and distinct grants of Liens; and (b) because of, among other things, their differing rights in the Collateral, the Obligations owing to the Term Loan A Lenders, the Term Loan B Lenders and Revolving Lenders are fundamentally different and must be separately classified in any plan of reorganization proposed or adopted in an Insolvency or Liquidation Proceeding.

23

To further effectuate the intent of the parties as provided in the immediately preceding sentence, if it is held that the claims of the Term Loan A Lenders, the Term Loan B Lenders and the Revolving Lenders in respect of the Collateral constitute only one secured claim (rather than separate classes of senior and junior secured claims), then each of the parties hereto hereby acknowledges and agrees that, (i) with respect to all distributions of Collateral (other than Term Loan Priority Collateral) all such distributions shall be made as if there were separate classes of senior and junior secured claims against Credit Parties in respect of such Collateral (with the effect being that, to the extent that the aggregate value of such Collateral is sufficient (for this purpose ignoring all claims held by the Term Loan Lenders), the Revolving Lenders shall be entitled to receive, in addition to amounts distributed to them in respect of principal, pre-petition interest and other claims, all amounts owing in respect of post-petition interest and reasonable fees, costs and charges provided for in this Agreement, including any additional interest payable pursuant to this Agreement arising from or related to an Event of Default, which is disallowed as a claim in any Insolvency or Liquidation Proceeding, before any distribution is made in respect of the claims held by the Term Loan Lenders, with the Term Loan Administrative Agent and Term Loan Lenders hereby acknowledging and agreeing to turn over to the Revolving Loan Administrative Agent, for itself and on behalf of the Revolving Lenders, amounts otherwise received or receivable by them to the extent necessary to effectuate the intent of this clause (i), even if such turnover has the effect of reducing the claim or recovery of the Term Loan Lenders), (ii) with respect to all distributions of Term Loan A Priority Collateral all such distributions shall be made as if there were separate classes of senior and junior secured claims against Credit Parties in respect of such Term Loan A Priority Collateral (with the effect being that, to the extent that the aggregate value of such Term Loan A Priority Collateral is sufficient (for this purpose ignoring all claims held by the Revolving Lenders and Term Loan B Lenders), the Term Loan A Lenders shall be entitled to receive, in addition to amounts distributed to them in respect of principal, pre-petition interest and other claims, all amounts owing in respect of post-petition interest and reasonable fees, costs and charges provided for under this Agreement, including any additional interest payable pursuant to this Agreement, arising from or related to an Event of Default, which is disallowed as a claim in any Insolvency or Liquidation Proceeding, before any distribution is made in respect of the claims held by the Revolving Lenders and Term Loan B Lenders, with the Revolving Loan Administrative Agent and Revolving Lenders and Term Loan Administrative Agent (in its capacity as administrative agent for the Term Loan B Lenders) and Term Loan B Lenders hereby acknowledging and agreeing to turn over to the Term Loan Administrative Agent, for itself (in its capacity as administrative agent for the Term Loan A Lenders) and on behalf of the Term Loan A Lenders, amounts otherwise received or receivable by them to the extent necessary to effectuate the intent of this sentence, even if such turnover has the effect of reducing the claim or recovery of the Revolving Lenders and Term Loan B Lenders), and (iii) with respect to all distributions of Term Loan B Priority Collateral all such distributions shall be made as if there were separate classes of senior and junior secured claims against Credit Parties in respect of such Term Loan B Priority Collateral (with the effect being that, to the extent that the aggregate value of such Term Loan B Priority Collateral is sufficient (for this purpose ignoring all claims held by the Revolving Lenders and Term Loan A Lenders), the Term Loan B Lenders shall be entitled to receive, in addition to amounts distributed to them in respect of principal, pre-petition interest and other claims, all amounts owing in respect of post-petition interest and reasonable fees, costs and charges provided for under this Agreement, including any additional interest payable pursuant to