**08 C 730**

**JUDGE KENNELLY**
**MAGISTRATE JUDGE ASHMAN**

Exhibit B

Part 6

other Lender or holder of a note or participation interest, and may exercise the same as though it was not performing the duties specified herein; and the terms "Lenders," "Requisite Lenders" or any similar terms shall, unless the context clearly otherwise indicates, include each Agent in its individual capacity. Either Agent may accept deposits from, lend money to, acquire Equity Interests in, and generally engage in any kind of banking, trust, financial advisor or other business with any Credit Party or any Affiliate of any Credit Party as if it were not performing the duties specified herein, and may accept fees and other consideration from any Credit Party for services in connection with this Agreement and otherwise, without having to account for the same to Lenders, to the extent such activities are not in contravention of the terms of this Agreement.

(h)  Holders of Notes. Each Agent may deem and treat the payee of any promissory note as the owner thereof for all purposes hereof unless and until a written notice of the assignment or transfer thereof shall have been filed with such Agent. Any request, authority or consent of any Person who, at the time of making such request or giving such authority or consent, is the holder of any promissory note, shall be conclusive and binding on any subsequent holder, transferee or assignee of such promissory note or of any promissory note or notes issued in exchange therefor.

(i)  Successor Agent.

(i)  Term Loan Administrative Agent may, upon five (5) Business Days' notice to Term Loan Lenders and Borrower Representative, resign at any time (effective upon the appointment of a successor Term Loan Administrative Agent pursuant to the provisions of this Section 18(i)) by giving written notice thereof to Term Loan Lenders and Borrower Representative. Upon any such resignation, Requisite Term Lenders shall have the right, upon five (5) days' notice, to appoint a successor Term Loan Administrative Agent. If no successor Term Loan Administrative Agent shall have been so appointed by Requisite Term Lenders and have accepted such appointment, within thirty (30) days after the retiring Term Loan Administrative Agent's giving of notice of resignation, then, upon five (5) days' notice, the retiring Term Loan Administrative Agent may, on behalf of Term Loan Lenders, appoint a successor Term Loan Administrative Agent, which shall be a bank or a trust company or other financial institution that maintains an office in the United States, or a commercial bank organized under the laws of the United States of America or of any State thereof, or any affiliate of such bank or trust company or other financial institution which is engaged in the banking business, having a combined capital and surplus of at least Fifty Million and No/100 Dollars ($50,000,000). Upon the acceptance of any appointment as a Term Loan Administrative Agent hereunder by a successor Term Loan Administrative Agent, such successor Term Loan Administrative Agent shall thereupon succeed to and become vested with all the rights, powers, privileges and duties of the retiring Term Loan Administrative Agent, and the retiring Term Loan Administrative Agent shall be discharged from its duties and obligations under this Agreement. After any retiring Term Loan Administrative Agent's resignation hereunder as Term Loan Administrative Agent, the provisions of this Section 18 shall inure to its benefit as to any actions taken or omitted to be taken by it while it was a Term Loan Administrative Agent under this Agreement.

69

(ii) Revolving Loan Administrative Agent may, upon five (5) Business Days' notice to Revolving Lenders and Borrower Representative, resign at any time (effective upon the appointment of a successor Revolving Loan Administrative Agent pursuant to the provisions of this Section 18(ii)) by giving written notice thereof to Revolving Lenders and Borrower Representative. Upon any such resignation, Requisite Revolving Lenders shall have the right, upon five (5) days' notice, to appoint a successor Revolving Loan Administrative Agent. If no successor Revolving Loan Administrative Agent shall have been so appointed by Requisite Revolving Lenders and have accepted such appointment, within thirty (30) days after the retiring Revolving Loan Administrative Agent's giving of notice of resignation, then, upon five (5) days' notice, the retiring Revolving Loan Administrative Agent may, on behalf of Revolving Lenders, appoint a successor Revolving Loan Administrative Agent, which shall be a bank or a trust company or other financial institution that maintains an office in the United States, or a commercial bank organized under the laws of the United States of America or of any State thereof, or any affiliate of such bank or trust company or other financial institution which is engaged in the banking business, having a combined capital and surplus of at least Fifty Million and No/100 Dollars ($50,000,000). Upon the acceptance of any appointment as a Revolving Loan Administrative Agent hereunder by a successor Revolving Loan Administrative Agent, such successor Revolving Loan Administrative Agent shall thereupon succeed to and become vested with all the rights, powers, privileges and duties of the retiring Revolving Loan Administrative Agent, and the retiring Revolving Loan Administrative Agent shall be discharged from its duties and obligations under this Agreement. After any retiring Revolving Loan Administrative Agent's resignation hereunder as Revolving Loan Administrative Agent, the provisions of this Section 18 shall inure to its benefit as to any actions taken or omitted to be taken by it while it was a Revolving Loan Administrative Agent under this Agreement.

(j) Collateral Matters.

(i) Each Lender authorizes and directs Term Loan Administrative Agent and Revolving Loan Administrative Agent, as applicable, to enter into the Other Agreements for the benefit of Lenders. Each Lender hereby agrees that, except as otherwise set forth herein, any action taken by Requisite Lenders in accordance with the provisions of this Agreement or the Other Agreements, and the exercise by the Requisite Lenders of the powers set forth herein or therein, together with such other powers as are reasonably incidental thereto, shall be authorized and binding upon all Lenders. Term Loan Administrative Agent or Revolving Loan Administrative Agent, as applicable, is hereby authorized on behalf of all Lenders, without the necessity of any notice to or further consent from any Lender, to take any action with respect to any Collateral or Other Agreements that may be necessary to perfect and maintain perfected the security interest in and Liens upon the Collateral granted pursuant to this Agreement and the Other Agreements.

(ii) Neither Agent will, without the verbal consent of all Lenders, which consent shall (a) be confirmed promptly thereafter in writing and (b) not be unreasonably withheld or delayed, execute any release of Agents' security interest in any Collateral except for releases relating to dispositions of Collateral (x) permitted by this

Agreement, and (y) in connection with the repayment in full of all of the Obligations by Credit Parties and the termination of all obligations of Agents and Lenders under this Agreement and the Other Agreements; provided, that with the consent of Requisite Lenders, Agents may release its Liens on Collateral having a book value not greater than ten percent (10%) of the total book value of all Collateral, as determined by Agents, either in a single transaction or series of related transactions, not to exceed twenty percent (20%) of the book value of all Collateral in any Fiscal Year. Agents shall not be required to execute any such release on terms which, in Agents' collective opinion, would expose Agents to liability or create any obligation or entail any consequence other than the release of such Liens without recourse or warranty. In the event of any sale or transfer of any of the Collateral, Agents shall be authorized to deduct all of the expenses reasonably incurred by Agents from the proceeds of any such sale or transfer.

(iii)    Lenders hereby agree that the Lien granted to Agents in any property sold or disposed of in accordance with the provisions of the Agreement shall be automatically released; provided, however, that Agents' Lien shall attach to and continue for the benefit of Agents and Lenders in the proceeds and products of such property arising from any such sale or disposition.

(iv)    To the extent, pursuant to the provisions of this Section 18(j), both Agent's execution of a release is required to release its Lien upon any sale and transfer of Collateral which is consented to in writing by Requisite Lenders or all Lenders, as applicable, and upon at least five (5) business days' prior written request by Borrower Representative, Agents shall (and is hereby irrevocably authorized by Lenders to) execute such documents as may be necessary to evidence the release of the Liens granted to Agents for the benefit of Lenders herein or pursuant hereto upon the Collateral that was sold or transferred.

(v)    Agents shall have no any obligation whatsoever to Lenders or to any other Person to assure that the Collateral exists or is owned by Credit Parties or any other Obligor, or is cared for, protected or insured; or that the Liens granted to Agents herein or pursuant hereto have been properly or sufficiently or lawfully created, perfected, protected or enforced or are entitled to any particular priority, or to exercise or to continue exercising, at all or in any manner or under any duty of care, disclosure or fidelity, any of the rights, authorities and powers granted or available to Agents in this Section 18 or in any of the Other Agreements, it being understood and agreed that in respect of the Collateral, or any act, omission or event related thereto, each Agent may act in any manner it may deem appropriate, in its sole discretion, given Agents' own interest in the Collateral as one of Lenders, and that Agents shall have no duty or liability whatsoever to Lenders, except for its gross negligence or willful misconduct.

(vi)    In the event that any Lender receives any proceeds of any Collateral by setoff, exercise of any banker's Lien or otherwise, in an amount in excess of such Lender's Pro Rata Share of such Proceeds (taking into account the tranches of Lenders and payment priorities provided for in Section 5(c)), such Lender shall purchase for cash (and other Lenders shall sell) interests in each of such other Lender's Pro Rata Share of the Obligations as would be necessary to cause all Lenders to share the amount

so set off or otherwise received with each other Lender in accordance with their respective Pro Rata Shares (taking into account the tranches of Lenders and payment priorities provided for in Section 5(c)). No Lender shall exercise any right of setoff or banker's Lien without the prior written consent of Agents.

(k)  Actions with Respect to Defaults. In addition to Agents' right to take actions on its own accord as permitted under this Agreement, Agents shall take such action with respect to an Event of Default as shall be directed by Requisite Lenders or all Lenders, as applicable, under this Agreement; provided, that until Agents shall have received such directions, either Agent may (but shall not be obligated to) take such action, or refrain from taking such action, with respect to such Event of Default as it shall deem advisable and in the best interests of Lenders. No Lender shall have any right individually to enforce or seek to enforce this Agreement or any Other Agreement or to realize upon any Collateral, unless instructed to do so by Agents.

(l)  Delivery of Information. Agents shall not be required to deliver to any Lender originals or copies of any documents, instruments, notices, communications or other information received by either Agent from any Credit Party or any other Obligor, Requisite Lenders, any Lender or any other Person under or in connection with this Agreement or any Other Agreement except (i) as specifically provided in this Agreement or any Other Agreement and (ii) as specifically requested from time to time in writing by any Lender with respect to a specific document, instrument, notice or other written communication received by and in the possession of Agents at the time of receipt of such request, and then only in accordance with such specific request.

(m)  Demand. Subject to the terms of this Agreement, Agents shall make demand for repayment by Borrowers and/or Credit Parties of all Obligations owing by Borrowers and/or Credit Parties hereunder, after the occurrence and during the continuance of an Event of Default, upon the written request of Requisite Lenders. Agents shall make such demand in such manner as it deems appropriate, in its sole discretion, to effectuate the request of the Requisite Lenders. Nothing contained herein shall limit the discretion of Revolving Loan Administrative Agent to take reserves, to deem certain Accounts ineligible, or to exercise any other discretion granted to Revolving Loan Administrative Agent in this Agreement.

(n)  Notice of Default. Neither Agent shall be deemed to have knowledge or notice of the occurrence of any Event of Default or Default, except with respect to Events of Default arising as a result of a Borrower's failure to pay principal, interest or fees required to be paid to either Agent for the benefit of Lenders, unless such Agent shall have received written notice from a Lender or a Credit Party describing such Event of Default or Default, and which identifies such event as a "notice of default." Upon receipt of any such notice, Agents will notify each Lender of such receipt.

19.  ASSIGNABILITY.

(a)  No Credit Party shall have the right to assign this Agreement or any interest therein except with the prior written consent of Agents and all Lenders.

(b) Any Lender may make, carry or transfer Loans at, to or for the account of, any Affiliate of such Lender.

(c) Each Lender may, with the consent of Agents and, so long as no Event of Default is then continuing, Borrower Representative (which consent shall not be unreasonably withheld), but without the consent of any other Lender or Credit Party, assign to one or more banks or other financial institutions all or a portion of its rights and obligations under this Agreement and the Other Agreements; provided, that (i) for each such assignment, the parties thereto shall execute and deliver to the applicable Agent, for its acceptance and recording in the Register (as defined below), an Assignment and Acceptance Agreement in the form attached hereto as Exhibit F (the "**Assignment and Acceptance**"), and a processing and recordation fee of Three Thousand Five Hundred and No/100 Dollars ($3,500.00) to be paid by the assignee, and (ii) no such assignment shall be for less than Five Hundred Thousand and No/100 Dollars ($500,000.00) (or, if less, all of assignor's remaining Loans), and (iii) the consent of Borrower Representative shall not required for an Assignment by a Lender to another Lender or an Affiliate of a Lender. Upon such execution and delivery of the Assignment and Acceptance to the applicable Agent, from and after the date specified as the effective date in the Assignment and Acceptance, (x) the assignee thereunder shall be a party hereto, and, to the extent that rights and obligations hereunder have been assigned to it pursuant to such Assignment and Acceptance, such assignee shall have the rights and obligations of a Lender hereunder and (y) the assignor thereunder shall, to the extent that rights and obligations hereunder have been assigned by it pursuant to such Assignment and Acceptance, relinquish its rights (other than any rights it may have pursuant to Section 23 of the Agreement which will survive) and be released from its obligations under this Agreement (and, in the case of an Assignment and Acceptance covering all or the remaining portion of an assigning Lender's rights and obligations under this Agreement, such Lender shall cease to be a party hereto).

(d) By executing and delivering an Assignment and Acceptance, the assignee thereunder confirms and agrees as follows: (i) other than as provided in such Assignment and Acceptance, the assigning Lender makes no representation or warranty and assumes no responsibility with respect to any statements, warranties or representations made in or in connection with this Agreement and the Other Agreements or the execution, legality, validity, enforceability, genuineness, sufficiency or value of this Agreement or any of the Other Agreements, (ii) such assigning Lender makes no representation or warranty and assumes no responsibility with respect to the financial condition of any Credit Party or any other Obligor or the performance or observance by any Credit Party or any other Obligor of its obligations under this Agreement, (iii) such assignee confirms that it has received a copy of this Agreement and the Other Agreements, together with copies of the financial statements referred to in Section 9 of the Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into such Assignment and Acceptance, (iv) such assignee will, independently and without reliance upon either Agent, such assigning Lender or any other Lender, and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under this Agreement, (v) such assignee appoints and authorizes the applicable Agent to take such action as agent on its behalf and to exercise such powers under this Agreement as are delegated to such Agent by the terms hereof, together with such powers as are reasonably incidental thereto and

(vi) such assignee agrees that it will perform in accordance with their terms all of the obligations which by the terms of this Agreement are required to be performed by it as a Lender.

(e) Each Agent shall maintain at its address referred to in Section 24 of the Agreement a copy of each Assignment and Acceptance delivered to and accepted by it and a register for the recordation of the names and addresses of Lenders, the Commitments of each Lender and principal amount of the Loans owing to, each Lender from time to time (collectively, the "**Register**"). The entries in the Register shall be conclusive and binding for all purposes, absent manifest error, and Credit Parties, Agents and Lenders may treat each Person whose name is recorded in the Register as a Lender hereunder for all purposes of this Agreement. The Register and copies of each Assignment and Acceptance shall be available for inspection by Credit Parties, Agents or any Lender at any reasonable time and from time to time upon reasonable prior notice.

(f) Upon its receipt of an Assignment and Acceptance executed by an assigning Lender, the applicable Agent shall, if such Assignment and Acceptance has been completed and is in substantially the form of Exhibit F hereto, (i) accept such Assignment and Acceptance, (ii) record the information contained therein in the Register and (iii) give prompt notice thereof to Borrower Representative. Within five (5) Business Days after its receipt of such notice, each Borrower shall execute and deliver to the applicable Agent in exchange for the surrendered promissory note or notes, a new promissory note or notes to the order of the assignee in amounts equal to such assignee's Commitments and outstanding Loans hereunder and, if the assigning Lender has retained a portion of the Loans, a new promissory note or notes to the order of the assigning Lender in an amount equal to the remaining Commitments and outstanding Loans hereunder of such assigning Lender under the terms of this Agreement. Such new promissory note or notes shall re-evidence the indebtedness outstanding under the old promissory note or notes and shall be in the aggregate principal amount of such surrendered promissory note or notes, shall be dated of even date herewith and shall otherwise be in substantially the form of the promissory note or notes subject to such assignment.

(g) Each Lender may sell participations (without the consent of either Agent, any Credit Party or any other Lender) to one or more parties, in or to all (or a portion) of its rights and obligations under this Agreement (including, without limitation, all or a portion of the Commitments or the Loans owing to it); provided, that (i) such Lender's obligations under this Agreement shall remain unchanged, (ii) such Lender shall remain solely responsible to the other parties hereto for the performance of such obligations, (iii) Credit Parties, Agents, and the other Lenders shall continue to deal solely and directly with such Lender in connection with such Lender's rights and obligations under this Agreement and (iv) such Lender shall not transfer, grant, assign or sell any participation under which the participant shall have rights to approve any amendment or waiver of this Agreement.

(h) Each Credit Party hereby consents to the pledge or collateral assignment and grant of a security interest by any Lender in connection with its own financing, including all rights, benefits, warranties, representations, covenants, indemnities and remedies, and all proceeds of the foregoing, contained in this Agreement and any of the Other Agreements.

(i) In connection with the efforts of any Lender to assign its rights or obligations or to participate interests, such Lender may disclose any information in its possession regarding Credit Parties.

20. AMENDMENTS, ETC. No amendment or waiver of any provision of this Agreement or any of the Other Agreements, nor consent to any departure by any Obligor therefrom, shall in any event be effective unless the same shall be in writing and signed by Credit Parties a party thereto, Agents, and Requisite Lenders, or if Lenders shall not be parties thereto, by the parties thereto and consented to by Requisite Lenders, and each such amendment, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given; provided, that no amendment, waiver or consent shall (i) extend or increase any Commitment of any Lender without the written consent of such Lender, (ii) reduce the principal of, or interest on, any Loans (other than as expressly permitted herein) or any fees hereunder, without the written consent of each Lender directly affected thereby, (iii) postpone any date fixed for any payment in respect of principal of, or interest on, any Loan or any fees hereunder, without the written consent of each Lender directly affected thereby, (iv) amend or waive this Section 20, change the Pro Rata Shares of Lenders, change the definition of Requisite Lenders, Requisite Revolving Lenders, Requisite Term Loan A Lenders, Requisite Term Loan B Lenders or any minimum requirement necessary for all Lenders, Requisite Lenders, Requisite Revolving Lenders, Requisite Term Loan A Lenders or Requisite Term Loan B Lenders to take any action hereunder, in each case, without the written consent of all Lenders, (v) change the definition of Requisite Revolving Lenders, Requisite Term Loan A Lenders or Requisite Term Loan B Lenders, or any minimum requirement necessary for Requisite Revolving Lenders or Requisite Term Loan A Lenders or Requisite Term Loan B Lenders to take any action hereunder, without the written consent of all Revolving Lenders, all Term Loan A Lenders or all Term Loan B Lenders, respectively, or (vi) except in connection with the financing, refinancing, sale or other disposition of any asset of any Credit Party permitted under this Agreement (or to the extent Requisite Lender approval only is required with any such release pursuant to Section 18(j)), release or subordinate any Liens in favor of Agents, for the benefit of Agents and Lenders, on any of the Collateral, without the written consent of all Lenders. Notwithstanding any of the foregoing to the contrary, (a) for purposes of voting or consenting to matters with respect to this Agreement and the Other Agreements, a Defaulting Lender shall not be considered a Lender and such Defaulting Lender's Commitments and Loans shall each be deemed to be $0 until such Defaulting Lender makes the payments required in this Agreement, (b) the consent of Credit Parties shall not be required for any amendment, modification or waiver of the provisions of this Section 20, (c) the consent of Agents shall be required for any amendment, modification, consent or waiver that affects the rights or duties of Agents under this Agreement or the Other Agreements, (d) the consent of the Term Loan A Lenders shall be required for any amendment, modification, consent or waiver that directly affects the Term Loan A Priority Collateral, and (e) the consent of the Term Loan B Lenders shall be required for any amendment, modification, consent or waiver that directly affects the Term Loan B Priority Collateral.

In the event that any consent, waiver or amendment requiring the agreement of all Lenders as set forth above is agreed to by the Requisite Lenders, but not all Lenders, the applicable Agent may, in its sole discretion, cause any nonconsenting Lender to assign its rights and obligations under this Agreement and the Other Agreements to one or more new Lenders or existing Lenders in the manner and according to the terms set forth in Section 19 of this

Agreement; provided, that (i) no Lender may be required to assign its rights and obligations to a new Lender because such lender is unwilling to increase its own loan Commitments, (ii) such new Lender must be willing to consent to the proposed amendment, waiver or consent and (iii) in connection with such assignment, the new Lender pays the assigning Lender an amount equal to the Obligations owing to such assigning Lender, including all principal, accrued and unpaid interest and accrued and an unpaid fees to the date of assignment. Such assignment shall occur within thirty (30) days of notice by Revolving Loan Administrative Agent or Term Loan Administrative Agent, as applicable, to such nonconsenting Lender of such Agent's intent to cause such nonconsenting Lender to assign its interests hereunder.

21. NONLIABILITY OF AGENTS AND LENDERS. The relationship between Credit Parties, Agents and Lenders shall be solely that of obligor and lender. Neither either Agent nor any Lender shall have any fiduciary responsibilities to Credit Parties. Neither either Agent nor any Lender undertakes any responsibility to Credit Parties to review or inform Credit Parties of any matter in connection with any phase of any Credit Party's business or operations.

22. JOINT AND SEVERAL LIABILITY.

(a) Each Borrower shall be jointly and severally liable for all of the Obligations of Borrowers under this Agreement, regardless of which of the Borrowers actually receives the proceeds or other benefits of the Loans or other extensions of credit hereunder or the manner in which Borrowers, any Agent or any Lender accounts therefor in their respective books and records.

(b) Each Borrower acknowledges that it will enjoy significant benefits from the business conducted by the other Borrowers because of, *inter alia*, their combined ability to bargain with other Persons including without limitation their ability to receive the Loans and other credit extensions under this Agreement and the other Loan Documents which would not have been available to a Borrower acting alone. Each Borrower has determined that it is in its best interest to procure the credit facilities contemplated hereunder, with the credit support of the other Borrowers as contemplated by this Agreement and the other Loan Documents.

(c) Each of the Agents and the Lenders have advised Borrower that it is unwilling to enter into this Agreement and the other Loan Documents and make available the credit facilities extended hereby or thereby to any Borrower unless each Borrower agrees, among other things, to be jointly and severally liable for the due and proper payment of the Obligations of each other Borrower under this Agreement and the other Loan Documents. Each Borrower has determined that it is in its best interest and in pursuit of its purposes that it so induce the Lenders to extend credit pursuant to this Agreement and the other documents executed in connection herewith (A) because of the desirability to each Borrower of the credit facilities hereunder and the interest rates and the modes of borrowing available hereunder and thereunder, (B) because each Borrower may engage in transactions jointly with other Borrowers and (C) because each Borrower may require, from time to time, access to funds under this Agreement for the purposes herein set forth. Each Borrower, individually, expressly understands, agrees and acknowledges, that the credit facilities contemplated hereunder would not be made available on the terms herein in the absence of the collective credit of all the Borrower, and the joint and several liability of all the Borrowers. Accordingly, each Borrower acknowledges that the benefit

of the accommodations made under this Agreement to all Borrowers, as a whole, constitutes reasonably equivalent value, regardless of the amount of the indebtedness actually borrowed by, advanced to, or the amount of credit provided to, or the amount of collateral provided by, any one Borrower.

(d) Each Borrower has determined that it has and, after giving effect to the transactions contemplated by this Agreement and the other Loan Documents (including, without limitation, the inter-Borrower arrangement set forth in this Section) will have, assets having a fair saleable value in excess of the amount required to pay its probable liability on its existing debts as they fall due for payment and that the sum of its debts is not and will not then be greater than all of its property at a fair valuation, that such Borrower has, and will have, access to adequate capital for the conduct of its business and the ability to pay its debts from time to time incurred in connection therewith as such debts mature and that the value of the benefits to be derived by such Borrower from the access to funds under this Agreement (including, without limitation, the inter-Borrower arrangement set forth in this Section) is reasonably equivalent to the obligations undertaken pursuant hereto.

(e) Borrower Representative (on behalf of each Borrower) shall maintain records specifying (A) all Obligations incurred by each Borrower, (B) the date of such incurrence, (C) the date and amount of any payments made in respect of such Obligations and (D) all inter-Borrower obligations pursuant to this Section. Borrower Representative shall make copies of such records available to the Agents, upon request.

(f) To the extent that applicable law otherwise would render the full amount of the joint and several obligations of any Borrower hereunder and under the other Loan Documents invalid or unenforceable, such Person's obligations hereunder and under the other Loan Documents shall be limited to the maximum amount which does not result in such invalidity or unenforceability; provided, however, that each Borrower's obligations hereunder and under the other Loan Documents shall be presumptively valid and enforceable to their fullest extent in accordance with the terms hereof or thereof, as if this Section were not a part of this Agreement.

(g) To the extent that any Borrower shall make a payment under this Section of all or any of the Obligations (a "**Joint Liability Payment**") which, taking into account all other Joint Liability Payments then previously or concurrently made by any other Borrower, exceeds the amount that such Borrower would otherwise have paid if each Borrower had paid the aggregate Obligations satisfied by such Joint Liability Payments in the same proportion that such Person's "Allocable Amount" (as defined below) (as determined immediately prior to such Joint Liability Payments) bore to the aggregate Allocable Amounts of each of the Borrowers as determined immediately prior to the making of such Joint Liability Payments, then, following indefeasible payment in full in cash of the Obligations and termination of the Commitments, such Borrower shall be entitled to receive contribution and indemnification payments from, and be reimbursed by, each other Borrower for the amount of such excess, *pro rata* based upon their respective Allocable Amounts in effect immediately prior to such Joint Liability Payments. As of any date of determination, the "**Allocable Amount**" of any Borrower shall be equal to the maximum amount of the claim which could then be recovered from such Borrower under this Section without rendering such claim voidable or avoidable under §548 of Chapter 11 of the

Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law.

(h)     Each Borrower assumes responsibility for keeping itself informed of the financial condition of each other Borrower, and any and all endorsers and/or guarantors of any instrument or document evidencing all or any part of such other Borrower's Obligations, and of all other circumstances bearing upon the risk of nonpayment by such other Borrower of their Obligations, and each Borrower agrees that neither any Agent nor any Lender shall not have any duty to advise such Borrower of information known to any Agent or any Lender regarding such condition or any such circumstances or to undertake any investigation not a part of its regular business routine. If any Agent or any Lender, in its sole discretion, undertakes at any time or from time to time to provide any such information to a Borrower, neither any Agent nor any Lender shall not be under any obligation to update any such information or to provide any such information to such Borrower or any other Person on any subsequent occasion.

(i)     Each Agent is hereby authorized, without notice or demand and without affecting the liability of a Borrower hereunder, to, at any time and from time to time, (A) renew, extend, accelerate or otherwise change the time for payment of, or other terms relating to, Obligations incurred by any Borrower or other Obligor, otherwise modify, amend or change the terms of any promissory note or other agreement, document or instrument now or hereafter executed by any Borrower or other Obligor and delivered to any Agent or any Lender; (B) accept partial payments on an Obligation incurred by any Borrower; (C) take and hold security or collateral for the payment of an Obligation incurred by any Borrower hereunder or for the payment of any guaranties of an Obligation incurred by any Borrower or other liabilities of any Borrower and exchange, enforce, waive and release any such security or collateral; (D) apply such security or collateral and direct the order or manner of sale thereof as Agents, in their sole respective discretion, may determine; and (E) settle, release, compromise, collect or otherwise liquidate an Obligation incurred by any Borrower and any security or collateral therefor in any manner, without affecting or impairing the obligations of any other Borrower. Agents shall have the exclusive right to determine the time and manner of application of any payments or credits, whether received from a Borrower or any other source, and such determination shall be binding on each Borrower. All such payments and credits may be applied, reversed and reapplied, in whole or in part, to any of an Obligation incurred by any Borrower as Agents shall determine in their respective sole discretion without affecting the validity or enforceability of the Obligations of the other Borrowers.

(j)     Each Borrower hereby agrees that, except as hereinafter provided, its obligations hereunder shall be unconditional, irrespective of (A) the absence of any attempt to collect an Obligation incurred by Borrower from any Borrower or any guarantor or other action to enforce the same; (B) the waiver or consent by any Agent with respect to any provision of any instrument evidencing an Obligation incurred by Borrower, or any part thereof, or any other agreement heretofore, now or hereafter executed by a Borrower and delivered to any Agent; (C) the failure by any Agent to take any steps to perfect and maintain its security interest in, or to preserve its rights to, any security or collateral for an Obligation incurred by any Borrower; (D) the institution of any proceeding under the Bankruptcy Code, or any similar proceeding, by or against any Borrower or other Obligor, any Agent's or any Lender's election in any such proceeding of the application of §1111(b)(2) of the Bankruptcy Code; (E) any borrowing or grant

78

of a security interest by any Borrower as debtor-in-possession under §364 of the Bankruptcy Code; (F) the disallowance, under §502 of the Bankruptcy Code, of all or any portion of any Agent's or any Lender's claim(s) for repayment of any of an Obligation incurred by any Borrower; or (G) any other circumstance that might otherwise constitute a legal or equitable discharge or defense of a guarantor.

(k) Any notice given by Borrower Representative hereunder shall constitute and be deemed to be notice given by all Borrowers, jointly and severally. Notice given by any Agent or any Lender to Borrower Representative hereunder or pursuant to any other Loan Documents in accordance with the terms hereof or thereof shall constitute notice all Borrowers. The knowledge of any Borrower shall be imputed to all Borrowers, and any consent by Borrower Representative or any Borrower shall constitute the consent of and shall bind all Borrowers.

(l) This Section is intended only to define the relative rights of Borrowers, and nothing set forth in this Section is intended to or shall impair the obligations of Borrowers, jointly and severally, to pay any amounts as and when the same shall become due and payable in accordance with the terms of this Agreement or any other Loan Documents. Nothing contained in this Section shall limit the liability of any Borrower to pay the credit facilities made directly or indirectly to such Borrower and accrued interest, fees and expenses with respect thereto for which such Borrower shall be primarily liable.

(m) The parties hereto acknowledge that the rights of contribution and indemnification hereunder shall constitute assets of each Borrower to which such contribution and indemnification is owing. The rights of any indemnifying Borrower against the other Borrowers under this Section shall be exercisable upon the full and indefeasible payment of the Obligations and the termination of the Commitments.

(n) No payment made by or for the account of a Borrower, including, without limitation, (A) a payment made by such Borrower on behalf of an Obligation of another Borrower or (B) a payment made by any other person under any guaranty, shall entitle such Borrower, by subrogation or otherwise, to any payment from such other Borrower or from or out of property of such other Borrower and such Borrower shall not exercise any right or remedy against such other Borrower or any property of such other Borrower by reason of any performance of such Borrower of its joint and several obligations hereunder.

23. RELEASES; INDEMNITIES.

(a) To the fullest extent permitted by applicable law, in consideration of Agents and Lenders entering into this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which each Credit Party hereby acknowledges, each Credit Party, on its own behalf and on behalf of its successors (including, without limitation, any receiver or trustee acting on behalf of such Credit Party and any debtor-in-possession with respect to such Credit Party), assigns, subsidiaries and Affiliates (collectively, the "**Releasors**"), hereby forever release, discharge and acquit Agents and Lenders and their parents, subsidiaries, shareholders, Affiliates, partners, trustees, officers, employees, directors, agents and attorneys and their respective successors, heirs and assigns (collectively, the "**Releasees**") from any and all claims, demands, liabilities, responsibilities, disputes, causes, damages, actions and causes of action

(whether at law or in equity), indebtedness and obligations (collectively, "**Claims**") of every type, kind, nature, description or character, including, without limitation, any so-called "lender liability" claims or defenses, and irrespective of how, why or by reason of what facts, whether such Claims have heretofore arisen, are now existing or hereafter arise, or which could, might or be claimed to exist, of whatever kind or nature, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, matured or unmatured, fixed or contingent, each as though fully set forth herein at length, which may in any way arise out of, are connected with or in any way relate to actions or omissions which occurred on or prior to the date hereof with respect to any Credit Party, this Agreement, the Obligations, any Collateral, the Prior Agreements, any other Loan Document and any third parties liable in whole or in part for the Obligations. This provision shall survive and continue in full force and effect whether or not Credit Parties shall satisfy all other provisions of this Agreement or the Loan Documents, including payment in full of the Obligations.

(b) Each of the Releasors further agrees to indemnify the Releasees and hold the Releasees harmless from and against any and all such Claims (as such term is defined in the immediately preceding paragraph) that may be brought against any of the Releasees on behalf of any entity or Person, including, without limitation, officers, directors, agents, trustees, creditors, partners or shareholders of any of the Releasors, whether threatened or initiated, asserting any claim for legal or equitable remedy under any statutes, regulation or common-law principle arising from or in connection with the negotiation, preparation, execution, delivery, performance, administration and enforcement of this Agreement or any other Loan Document, the Obligations, any Collateral or the Prior Agreements. The foregoing indemnity shall survive the payment in full of the Obligations and the termination of this Agreement and the other Loan Documents.

24. NOTICE.

All written notices and other written communications with respect to this Agreement shall be sent by ordinary, certified or overnight mail, by telecopy or delivered in person, and in the case of Revolving Loan Administrative Agent or Term Loan Administrative Agent shall be sent to the applicable Agent at 233 South Wacker Drive, Suite 5350, Chicago, Illinois 60606, Attention: Chief Credit Officer, facsimile number: (312) 334-4449, in the case of a Lender shall be sent to the address set forth below its name on the signature page hereto or in the Assignment and Acceptance Agreement and in the case of any Credit Party shall be sent to it care of Borrower Representative at Borrower Representative's principal place of business set forth on Schedule 11(b) hereto or as otherwise directed by Borrower Representative in writing. All notices shall be deemed received upon actual receipt thereof or refusal of delivery.

25. APPOINTMENT OF BORROWER REPRESENTATIVE.

(a) Each Borrower hereby irrevocably appoints and constitutes Borrower Representative as its agent to request and receive the proceeds of advances in respect of the Loans (and to otherwise act on behalf of such Borrower pursuant to this Agreement and the other Loan Documents) from Lenders in the name or on behalf of each such Borrower. Agents may disburse such proceeds to the bank account of Borrower Representative (or any one or more of the Borrowers) without notice to any other Borrower or any other Obligor.