**08 C 730**

**JUDGE KENNELLY**
**MAGISTRATE JUDGE ASHMAN**

Exhibit B

Part 7

(b) Each Credit Party hereby irrevocably appoints and constitutes Borrower Representative as its agent to (i) receive statements of account and all other notices from Agents with respect to the Obligations or otherwise under or in connection with this Agreement and the other Loan Documents, (ii) execute and deliver Borrowing Base Certificates, Compliance Certificates and all other notices, certificates and documents to be executed and/or delivered by any Credit Party under this Agreement or the other Loan Documents; and (iii) otherwise act on behalf of such Credit Party pursuant to this Agreement and the other Loan Documents.

(c) The authorizations contained in this Section 25 are coupled with an interest and shall be irrevocable, and Agents may rely on any notice, request, information supplied by Borrower Representative, every document executed by Borrower Representative, every agreement made by Borrower Representative or other action taken by Borrower Representative in respect of any Borrower or other Credit Party as if the same were supplied, made or taken by such Borrower or Credit Party. Without limiting the generality of the foregoing, the failure of one or more Borrowers or other Credit Parties to join in the execution of any writing in connection herewith shall not relieve any Borrower or other Credit Party from obligations in respect of such writing.

(d) No purported termination of the appointment of Borrower Representative as agent shall be effective without the prior written consent of Agents.

26. CHOICE OF GOVERNING LAW; CONSTRUCTION; FORUM SELECTION.

This Agreement and the Other Agreements are submitted by Credit Parties to Agents and Lenders for their acceptance or rejection at Agents' principal place of business as an offer by Borrowers to borrow monies from Agents and Lenders now and from time to time hereafter, and shall not be binding upon Agents or any Lender or become effective until accepted by Agents and Lenders, in writing, at said place of business. If so accepted by Agents and Lenders, this Agreement and the Other Agreements shall be deemed to have been made at said place of business. **THIS AGREEMENT AND THE OTHER AGREEMENTS SHALL BE GOVERNED AND CONTROLLED BY THE INTERNAL LAWS OF THE STATE OF ILLINOIS AS TO INTERPRETATION, ENFORCEMENT, VALIDITY, CONSTRUCTION, EFFECT, AND IN ALL OTHER RESPECTS, INCLUDING, WITHOUT LIMITATION, THE LEGALITY OF THE INTEREST RATE AND OTHER CHARGES, BUT EXCLUDING PERFECTION OF THE SECURITY INTERESTS IN COLLATERAL LOCATED OUTSIDE OF THE STATE OF ILLINOIS, WHICH SHALL BE GOVERNED AND CONTROLLED BY THE LAWS OF THE RELEVANT JURISDICTION IN WHICH SUCH COLLATERAL IS LOCATED.** If any provision of this Agreement shall be held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or remaining provisions of this Agreement.

To induce Agents and Lenders to accept this Agreement, each Credit Party irrevocably agrees that, subject to each Agent's sole and absolute election, **ALL ACTIONS OR PROCEEDINGS IN ANY WAY, MANNER OR RESPECT, ARISING OUT OF OR FROM OR RELATED TO THIS AGREEMENT, THE OTHER AGREEMENTS OR THE COLLATERAL SHALL BE LITIGATED IN COURTS HAVING SITUS WITHIN THE**

CITY OF CHICAGO, STATE OF ILLINOIS. EACH CREDIT PARTY HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURTS LOCATED WITHIN SAID CITY AND STATE. EACH CREDIT PARTY HEREBY WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE UPON SUCH CREDIT PARTY BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO SUCH CREDIT PARTY, AT THE ADDRESS SET FORTH FOR NOTICE IN THIS AGREEMENT AND SERVICE SO MADE SHALL BE COMPLETE TEN (10) DAYS AFTER THE SAME HAS BEEN POSTED. EACH CREDIT PARTY HEREBY WAIVES ANY RIGHT IT MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT AGAINST SUCH CREDIT PARTY BY AGENTS OR LENDERS IN ACCORDANCE WITH THIS SECTION.

27. HEADINGS OF SUBDIVISIONS.

The headings of subdivisions in this Agreement are for convenience of reference only and shall not govern the interpretation of any of the provisions of this Agreement.

28. POWER OF ATTORNEY.

Each Credit Party acknowledges and agrees that its appointment of each Agent as its attorney and agent-in-fact for the purposes specified in this Agreement is an appointment coupled with an interest and shall be irrevocable until all of the Obligations are satisfied and paid in full and this Agreement is terminated.

29. CONFIDENTIALITY.

Each Credit Party, each Agent and each Lender hereby agree and acknowledge that any and all information relating to Credit Parties which is (i) furnished by such Credit Party to either Agent or any Lender (or to any affiliate of either Agent or any Lender); and (ii) non-public, confidential or proprietary in nature, shall be kept confidential by such Agent and such Lender or such affiliate in accordance with applicable law; provided, however, that such information and other credit information relating to such Credit Party may be distributed by such party to such party's directors, managers, officers, employees, attorneys, affiliates, assignees, participants, auditors, agents and regulators, to Agents and any other Lender and upon the order of a court or other governmental agency having jurisdiction over such Agent or such Lender or such affiliate, to any other party. Each Credit Party, Agents and each Lender further agree that this provision shall survive the termination of this Agreement.

30. BROKERAGE FEES.

Each Credit Party represents and warrants to Agents and Lenders that, with respect to the financing transaction contemplated herein, no Person is entitled to any brokerage fee or other commission, and each Credit Party agrees to indemnify and hold Agents and Lenders harmless against any and all such claims.

31. PUBLICITY.

Notwithstanding Section 29, Agents and Lenders are hereby authorized to issue appropriate press releases and to cause a tombstone to be published announcing the consummation of this transaction and the aggregate amount thereof.

32. LIMITATION OF ACTIONS.

Each Credit Party agrees that any claim or cause of action by any Credit Party against either Agent or any Lender, or any of either Agent's or any Lender's directors, officers, employees, agents, accountants or attorneys, based upon, arising from, or relating to this Agreement, or any other present or future agreement, or any other transaction contemplated hereby or thereby or relating hereto or thereto, or any other matter, cause or thing whatsoever, whether or not relating hereto or thereto, occurred, done, omitted or suffered to be done by either Agent or any Lender, or by either Agent's or any Lender's directors, officers, employees, agents, accountants or attorneys, whether sounding in contract or in tort or otherwise, shall be barred unless asserted by such Credit Party by the commencement of an action or proceeding in a court of competent jurisdiction by the filing of a complaint within one (1) year after the first act, occurrence or omission upon which such claim or cause of action, or any part thereof, is based and service of a summons and complaint on an officer of an Agent or a Lender, as applicable, or any other Person authorized to accept service of process on behalf of such Agent or such Lender, within thirty (30) days thereafter. Each Credit Party agrees that such one-year period of time is a reasonable and sufficient time for such Credit Party to investigate and act upon any such claim or cause of action. The one-year period provided herein shall not be waived, tolled, or extended except by a specific written agreement of Agents and Lenders. This provision shall survive any termination of this Agreement or any other agreement.

33. LIABILITY.

None of either Agent, any Lender or Affiliate of either Agent or any Lender shall be liable for any indirect, special, incidental or consequential damages in connection with any breach of contract, tort or other wrong relating to this Agreement or the Obligations or the establishment, administration or collection thereof (including without limitation damages for loss of profits, business interruption, or the like), whether such damages are foreseeable or unforeseeable, even if such Person has been advised of the possibility of such damages. None of either Agent, any Lender or Affiliate of either Agent or any Lender shall be liable for any claims, demands, losses or damages, of any kind whatsoever, made, claimed, incurred or suffered by the any Credit Party through such Person's ordinary negligence.

34. COUNTERPARTS.

This Agreement, any of the Other Agreements, and any amendments, waivers, consents or supplements may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which, when so executed and delivered, shall be deemed an original, but all of which counterparts together shall constitute but one agreement.

35. ELECTRONIC SUBMISSIONS.

(a) Agents may permit or require that any of the documents, certificates, forms, deliveries or other communications, authorized, required or contemplated by this Agreement or the Other Agreements, be submitted to the applicable Agent in "Approved Electronic Form" (as hereafter defined). For purposes hereof, "**Electronic Form**" means e-mail, e-mail attachments, data submitted on web-based forms or any other communication method that delivers machine-readable data or information to the applicable Agent, and "**Approved Electronic Form**" means an Electronic Form that has been approved in writing by the applicable Agent (which approval has not been revoked or modified by the applicable Agent) and sent to Borrower Representative. Any submissions made in an applicable Approved Electronic Form shall have the same force and effect that the same submissions would have had if they had been submitted in any other applicable form authorized, required or contemplated by this Agreement or the Other Agreements.

(b) If any Electronic Form is returned to the sender as undeliverable, the material included in such Electronic Form must be delivered to the loan officer of Agents in writing within the time required by the Loan Agreement. Credit Parties agree to maintain in their files the original versions of all certificates, collateral reports and other materials delivered to Agents by means of an Electronic Form and agree to furnish to Agents such original versions within five (5) Business Days after Agents' request (or such earlier time required by this Agreement), signed and certified (to the extent required hereunder) by an Authorized Officer or other Person required by this Agreement. No Agent or Lender shall have any liability to any Credit Party or any other Person for any loss or damage suffered by any Credit Party or any other Person as a result of any Agent's or Lender's honoring of any request for a Loan or other credit or reliance on any reports or other submission communicated to it in any Electronic Form and purportedly sent by any Credit Party, and no Agent or Lender shall have any duty to verify the origin of any such communication or the authority of the Person sending it.

36. WAIVER OF JURY TRIAL; OTHER WAIVERS.

(a) EACH CREDIT PARTY, EACH AGENT AND EACH LENDER HEREBY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING WHICH PERTAINS DIRECTLY OR INDIRECTLY TO THIS AGREEMENT, ANY OF THE OTHER AGREEMENTS, THE OBLIGATIONS, THE COLLATERAL, ANY ALLEGED TORTIOUS CONDUCT BY SUCH CREDIT PARTY, SUCH AGENT OR SUCH LENDER OR WHICH, IN ANY WAY, DIRECTLY OR INDIRECTLY, ARISES OUT OF OR RELATES TO THE RELATIONSHIP AMONG CREDIT PARTIES, AGENTS AND LENDERS. IN NO EVENT SHALL EITHER AGENT OR ANY LENDER BE LIABLE FOR LOST PROFITS OR OTHER SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES.

(b) Each Credit Party hereby waives demand, presentment, protest and notice of nonpayment, and further waives the benefit of all valuation, appraisal and exemption laws.

(c) Each Credit Party hereby waives the benefit of any law that would otherwise restrict or limit either Agent or any Lender or any affiliate of either Agent or any

Lender in the exercise of its right, which is hereby acknowledged and agreed to, to setoff against the Obligations, without notice at any time hereafter, any indebtedness, matured or unmatured, owing by either Agent or any Lender or such affiliate of either Agent or any Lender to any Credit Party, including, without limitation any Deposit Account at either Agent or any Lender or such affiliate.

(d)    EACH CREDIT PARTY HEREBY WAIVES ALL RIGHTS TO NOTICE AND HEARING OF ANY KIND PRIOR TO THE EXERCISE BY AGENTS AND LENDERS OF THEIR RIGHTS TO REPOSSESS THE COLLATERAL OF SUCH CREDIT PARTY WITHOUT JUDICIAL PROCESS OR TO REPLEVY, ATTACH OR LEVY UPON SUCH COLLATERAL.

(e)    Either Agent's and/or any Lender's failure, at any time or times hereafter, to require strict performance by any Credit Party of any provision of this Agreement or any of the Other Agreements shall not waive, affect or diminish any right of either Agent or any Lender thereafter to demand strict compliance and performance therewith. Any suspension or waiver by either Agent or any Lender of an Event of Default under this Agreement or any default under any of the Other Agreements shall not suspend, waive or affect any other Event of Default under this Agreement or any other default under any of the Other Agreements, whether the same is prior or subsequent thereto and whether of the same or of a different kind or character. No delay on the part of either Agent or any Lender in the exercise of any right or remedy under this Agreement or any Other Agreement shall preclude other or further exercise thereof or the exercise of any right or remedy. None of the undertakings, agreements, warranties, covenants and representations of any Credit Party contained in this Agreement or any of the Other Agreements, and no Event of Default under this Agreement or default under any of the Other Agreements, shall be deemed to have been suspended or waived by Agents and/or Lenders unless such suspension or waiver is in writing, signed by a duly authorized officer of both Agents, Requisite Lenders or all Lenders, as required herein, and directed to Credit Parties specifying such suspension or waiver.

37.    PATRIOT ACT.

Each Lender that is subject to the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 27, 2001)) (the "**Patriot Act**"), and each Agent (for itself and not on behalf of any Lender), hereby notifies each Credit Party that, pursuant to the requirements of the Patriot Act, such Lender and Agents are required to obtain, verify and record information that identifies each Credit Party, which information includes the name and address of each Credit Party and other information that will allow such Lender or the Agents, as applicable, to identify each Credit Party in accordance with the Patriot Act.

*SIGNATURE PAGES FOLLOW*

*Signature Page to Loan and Security Agreement*

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first written above.

BORROWERS:

CLC OF BILOXI, LLC
CLC OF BOONEVILLE, LLC
CLC OF DRESDEN, LLC
CLC OF DYERSBURG, LLC
CLC OF FULTON, LLC
CLC OF HUMBOLDT, LLC
CLC OF IUKA, LLC
CLC OF JACKSON, LLC
CLC OF LAKE PROVIDENCE, LLC
CLC OF LAUREL, LLC
CLC OF LEXINGTON, LLC
CLC OF LIBERTY, LLC
CLC OF MANCHESTER, LLC
CLC OF MERIDIAN, LLC
CLC OF OCEAN SPRINGS, LLC
CLC OF PASCAGOULA, LLC
CLC OF RIPLEY, LLC
CLC OF VAIDEN, LLC
CLC OF WEST POINT, LLC
CLC OF WHITEHAVEN, LLC
COMMUNITY LIVING CENTERS, LLC

By: _____
Douglas M. Wright, Jr.
Sole Manager

CHICAGO/#1492802

*Signature Page to Loan and Security Agreement*

ADDITIONAL CREDIT PARTIES:

**NATIONAL ELDERCARE SERVICES, INC.**

By: _____
Douglas M. Wright, Jr.
President

CHICAGO/#1492002

*Signature Page to Loan and Security Agreement*

        COMMUNITY ELDERCARE SERVICES, LLC
        RCI OF VAIDEN, LLC
        RCI OF IUKA, L.L.C.

By: _____
      Douglas M. Wright, Jr.
      Sole Manager

CHICAGO/#1492002

*Signature Page to Loan and Security Agreement*

PASCAGOULA HEALTHCARE, INC.

By: _____
Douglas M. Wright, Jr.
President

CHICAGO/#1492002

*Signature Page to Loan and Security Agreement*

BRIDGE HEALTHCARE FINANCE, LLC,
a Delaware limited liability company, as
Revolving Loan Administrative Agent and a
Lender

By _/s/ Kim Gordon_____
Kim Gordon
Executive Vice President and
Chief Credit Officer

Revolving Loan Commitment:　　$5,000,000

Term Loan A Commitment:　　$0

Term Loan B Commitment:　　$0

Notice Address:
233 South Wacker Drive, Suite 5350
Chicago, Illinois 60606
Attn: Chief Credit Officer
Fax: (312) 924-0201

CHICAGO/#1492002

*Signature Page to Loan and Security Agreement*

BRIDGE OPPORTUNITY FINANCE, LLC,
a Delaware limited liability company, as Term
Loan Administrative Agent and a Lender

By _____
Randolph T. Abrahams
Chief Executive Officer

| | |
|---|---|
| Revolving Loan Commitment: | $2,000,000 |
| Term Loan A Commitment: | $4,000,000 |
| Term Loan B Commitment: | $8,700,000 |

Notice Address:
233 South Wacker Drive, Suite 5350
Chicago, Illinois 60606
Attn: Chief Credit Officer
Fax: (312) 924-0201

CHICAGO/#1492002

# INDEX OF EXHIBITS AND SCHEDULES

ANNEX I          DEFINED TERMS

## EXHIBITS
Exhibit A    Borrowing Base Certificate
Exhibit B    Compliance Certificate
Exhibit C    Closing Document List
Exhibit D    Information Certificate
Exhibit E    Notice of Borrowing
Exhibit F    Assignment and Acceptance
Exhibit G    Joinder Agreement

## SCHEDULES
Schedule 1        Permitted Liens
Schedule 11(b)    Business and Collateral Locations; Certain Collateral
Schedule 11(g)    Litigation
Schedule 11(i)    Affiliate Transactions
Schedule 11(j)    Names & Trade Names
Schedule 11(n)    Indebtedness
Schedule 11(p)    Parent, Subsidiaries and Affiliates
Schedule 11(q)    Defaults
Schedule 11(t)    Environmental Matters
Schedule 11(x)    Healthcare Compliance
Schedule 11(y)    Healthcare Regulatory Matters
Schedule 11(z)    Licenses and Permits
Schedule 11(aa)   Healthcare Authorizations